[No. D050458. Fourth Dist., Div. One. Mar. 5, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
LEONZA KEVIN DUNCAN, Defendant and Appellant.

## COUNSEL

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Deana L. Bohenek, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McINTYRE, J.**—This case presents an issue as to whether driving with an upside-down license plate constitutes a violation of Vehicle Code section 5201. (All further statutory references are to the Vehicle Code.) As a matter of first impression in California, we conclude that the answer is yes.

### FACTUAL AND PROCEDURAL BACKGROUND

Leonza Kevin Duncan was arrested on April 24, 2006, by Chula Vista Police Officer Steve Szymczak and charged with transportation of methamphetamine, possession for sale of methamphetamine, misdemeanor possession of marijuana, and misdemeanor possession of tools with intent to break and enter. Following the preliminary hearing, Duncan brought a motion to suppress all evidence obtained as a result of his detention, arrest, and subsequent search of his vehicle.

At Duncan's suppression motion hearing, Officer Szymczak testified that, while on duty, he observed a vehicle driving toward him and noticed that the front license plate was upside down. As soon as Duncan drove past, Officer Szymczak made a U-turn but was delayed at a traffic light and could not immediately stop Duncan. Officer Szymczak located Duncan moments later parked at a motel in a high-crime area.

Officer Szymczak approached Duncan, who was getting out of his car and was holding a bag of food. Officer Szymczak asked Duncan if he was staying at the motel and Duncan replied, "Yes, I am. No. I'm going to get a room later." Duncan was then asked if the vehicle belonged to him and if he had a driver's license. Duncan responded "yes" to both questions, pulled out his wallet, and handed his driver's license to Officer Szymczak, stating that it was valid. Officer Szymczak then conducted a records check on Duncan's driver's license.

The records check showed that Duncan's driver's license was suspended. A corrected dispatch indicated that Duncan's license permitted driving in the course of his employment. Because Duncan was holding a food bag and was standing in a motel parking lot, Officer Szymczak concluded that Duncan was not in the course of employment. At some point, Duncan admitted that his driver's license was, in fact, suspended. The encounter lasted about three to five minutes.

Before the records check was completed, Officers Juan Camacho and J. English arrived. After completing the records check, Officer Szymczak cited Duncan and impounded his vehicle. The other officers assisted Officer Szymczak in an inventory search of Duncan's vehicle, which revealed the methamphetamine, marijuana, electronic scale, and small baggies that were the subject of the motion to suppress.

At the conclusion of the suppression hearing, the trial court found (1) Officer Szymczak testified credibly; (2) an upside-down license plate violates section 5201 because it is not clearly legible; (3) the violation provided the officer with reasonable suspicion; (4) Duncan violated his driver's license suspension because he was "clearly not [driving] to and from work"; and (5) even if reasonable suspicion did not exist, the encounter between Officer Szymczak and Duncan was consensual. Therefore, the trial court denied the motion to suppress.

After the trial court's denial, Duncan pleaded guilty to possessing methamphetamine for sale and was sentenced to two years in prison. He appeals, contending (1) the evidence was insufficient to support the officer's pretext stop; (2) the trial court erred in its interpretation of section 5201; and (3) evidence obtained during the inventory search was discovered as a result of an unlawful detention. We affirm the judgment.

## DISCUSSION

### 1. *Standard of Review*

In reviewing the denial of a motion to suppress evidence, we use a two-tiered standard of review. First, we view the record favorably to the ruling and "defer to the trial court's factual findings, express or implied, where supported by substantial evidence." (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].) We then exercise our independent review to determine "whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment." (*Ibid.*)

### 2. *Factual Findings*

Duncan challenges the sufficiency of the evidence to support a finding that his license plate was upside down. He points to Officer Szymczak's reports and Officer Camacho's testimony as support for his contention. Duncan is correct that the probable cause statement and arrest report did not mention the upside-down license plate and that, although Officer Camacho documented the license plate number on the impound report and noted two license plates, he testified that he did not recall seeing the license plate upside down and in

fact could not, in his experience, ever recall seeing an upside-down license plate. However, Officer Szymczak repeatedly testified that Duncan's license plate was upside down.

The trial court, not the reviewing court, "is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable." (*People v. Woods* (1999) 21 Cal.4th 668, 673 [88 Cal.Rptr.2d 88, 981 P.2d 1019].) "The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296 [145 Cal.Rptr. 876, 578 P.2d 123].) To reject the statements given by a witness whom the trial court has found credible, either they must be physically impossible or their falsity must be apparent without resorting to inferences or deductions. (*People v. Mayberry* (1975) 15 Cal.3d 143, 150 [125 Cal.Rptr. 745, 542 P.2d 1337].) When two or more inferences can reasonably be deduced from the facts as found, a reviewing court is without power to substitute its deductions for those of the trier of fact. (*People v. Johnson* (1980) 26 Cal.3d 557, 576–577 [162 Cal.Rptr. 431, 606 P.2d 738].)

Although we acknowledge that the evidence, as presented, could have resulted in different factual findings, we cannot say that no rational trier of fact could have concluded that Duncan's license plate was upside down. The trial court is the exclusive judge of the credibility of the witnesses. Moreover, nothing indicates that an upside-down license plate on Duncan's vehicle was physically impossible or that Officer Szymczak's testimony was obviously false. Therefore, we are bound by the court's factual findings.

3. *Section 5201*

Duncan further contends the trial court erred in ruling that an upside-down license plate constitutes a violation of section 5201, which provides in pertinent part that: "License plates shall at all times be securely fastened to the vehicle for which they are issued so as to prevent the plates from swinging, shall be mounted in a position so as to be clearly visible, and shall be maintained in a condition so as to be clearly legible." Duncan encourages a narrow reading of the statute, focusing on the absence of a specific requirement for the plate to be right side up. For additional support of this interpretation, he points to the lack of case law specifically imposing such a requirement.

██ When interpreting a statute, we must ascertain the legislative intent in order to effectuate the purpose of the law. (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) We first look to the

words of the statute, "giving them their usual and ordinary meaning." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) Absent ambiguity, "the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." (*Kizer v. Hanna* (1989) 48 Cal.3d 1, 8 [255 Cal.Rptr. 412, 767 P.2d 679].)

■ The statute imposes three requirements—that the plate be securely fastened to prevent swinging, that it be clearly visible, and that it be clearly legible. In denying Duncan's motion to suppress, the trial court ruled that an upside-down license plate is not clearly legible. We agree.

The words "clearly legible" are unambiguous. "Clearly" means "without equivocation; decidedly." (Random House Unabridged Dict. (2d ed. 1993) p. 384.) "Clearly suggests without doubt or obscurity." (*Ibid.*) The term has also been defined as " 'free from obscurity . . . unmistakable . . . unhampered by restriction or limitation.' " (*People v. White* (2001) 93 Cal.App.4th 1022, 1026 [113 Cal.Rptr.2d 584], quoting Webster's 9th New Collegiate Dict. (1987) p. 247.) "Legible" is defined as "capable of being read or deciphered, esp. with ease . . . easily readable." (Random House Unabridged Dict. (2d ed. 1993) p. 1099.) It is evident that the Legislature, in using the phrase "clearly legible," intended for the information on a license plate to be read with ease and without doubt or mistake. Therefore, we conclude it would be a violation of the statute to mount the license plate upside down, which would make the plate more difficult or confusing to read. As the trial court noted, "There are people who can read things upside down, but you have to look at it for quite a while." The court properly found that Duncan's license plate violated section 5201.

### 4. *Lawful Detention*

■ "[A] law enforcement officer may, consistent with the Fourth Amendment, briefly detain a vehicle if the objective facts indicate that the vehicle has violated a traffic law. The officer's subjective motivation in effecting the stop is irrelevant." (*People v. White, supra*, 93 Cal.App.4th at p. 1025, citing *Whren v. United States* (1996) 517 U.S. 806, 809–810 [135 L.Ed.2d 89, 116 S.Ct. 1769].)

Having concluded that Officer Szymczak had a lawful basis upon which to stop Duncan and investigate the license plate violation, we need not address Duncan's remaining contentions challenging the consensual nature of the contact with Officer Szymczak. During the lawful stop, Officer Szymczak determined that Duncan had been driving on a suspended license, which provided the justification for the impoundment and inventory search of Duncan's vehicle. Accordingly, the trial court did not err in denying Duncan's motion to suppress the evidence found in his vehicle.

## DISPOSITION

The judgment is affirmed.

McConnell, P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 11, 2008, S162579.