Filed 7/24/13  P. v. Castro CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054903 |
| v. | (Super.Ct.No. FSB1001917) |
| FRANKIE MARTINEZ CASTRO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  J. David Mazurek, Judge.  Affirmed with directions.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

1

Following a stabbing during a fight that left a young man dying[1] on the front porch of a house where a party had been given in his honor, defendant ran up onto the porch, punched another young man in the face, entered the house with a gun drawn, and threatened others. Defendant asserted he had heard about the fight and was looking for the cousin of his employer, whom he feared had been injured. He was convicted by a jury of misdemeanor assault (Pen. Code,[2] §§ 240, 241, subd. (a)) assault with a firearm (§ 245, subd. (a)(2)), committed with the use of a firearm (§ 12022.5, subd. (a)), and residential burglary (§ 459), committed with the use of a firearm (§ 12022.5, subd. (a)) and with others present in the house. Defendant was sentenced to 10 years in prison and appealed.

On appeal, defendant argues for reversal on the grounds that: (1) there was insufficient evidence to support the conviction for the assault with a firearm, (2) insufficiency of the evidence to support the burglary count, (3) the prosecutor committed misconduct during closing arguments, and (4) the court abused its discretion in allowing the family of the slain man to give victim impact statements during sentencing. We affirm.

---

[1] Defendant was not responsible for the stabbing or the events leading up to it.

[2] All further statutory references are to the Penal Code, unless otherwise indicated.

2

## BACKGROUND

On March 13, 2009, Lillie Walters hosted a party at the home of her parents for Anthony Vargas, a young marine who was on leave and preparing to return to his base in South Carolina. During the party, a physical fight between a boyfriend and girlfriend broke out. Lillie's friend Veronica told the couple to go outside. After Veronica pulled the fighting couple apart, Lillie told them to leave and broke up the party. While Lillie tried to disperse the people at the party, she noticed an SUV stopped in front of her house. The SUV had circled the neighborhood a few times. The occupants of the SUV yelled something to the people in front of Lillie's house, so Lillie approached the vehicle and told them to leave. The male driver of the SUV pulled out a gun and fired it into the air, so Lillie made her remaining guests get inside the house.

A short time after everyone was inside the house, Lillie's neighbor, Justin Kinder, arrived and announced that someone had smashed the back window of Anthony's Excursion, which was parked in the driveway. Justin Kinder had observed the window being shattered and the dark SUV speeding toward him as he approached Lillie's house. When those who were still at the party went outside, they observed a silver Acura driving away. The young men who were still present, including Justin Kinder, Justin Marquez, Chris Kurlowitz, and Anthony Vargas, left in Anthony's Excursion to pursue the car. Jeremy Parck and the girls stayed behind at Lillie's house.

The Excursion caught up with and cut off the Acura, and the occupants of the Excursion got out; they punched out the windows of the Acura when the Acura occupants

3

would not come out. Justin Marquez sustained injuries to his hand as a result of punching in the driver's window, striking the driver, so he returned to Lillie's house for treatment as Lillie had some first aid training and was studying to be a nurse. But Justin Marquez grabbed a towel, washed off the blood and covered his hand with the towel. The other young men returned to Lillie's in the Excursion; when they pulled up, they saw the SUV pull up, and the occupants of both vehicles began to fight. During this fight, Chris Kurlowitz was stabbed in the hand, and Anthony was stabbed in the torso.[3]

Anthony did not want to go into the house bleeding, so he collapsed on top of Veronica on the front porch near the entryway. Lillie went inside the house to get a towel to stop the bleeding while Anthony sat between Veronica's legs with his back to her chest. Justin Marquez and Jeremy Parck stayed with Anthony, Veronica and Justin Kinder on the porch.

At about this time, defendant came running up from the street with his hands under his shirt as if holding a weapon. Jeremy asked for help because Anthony was injured, but defendant punched Jeremy in the face. Justin Marquez, who had been on the telephone with the police dispatcher, saw defendant raise his shirt and take out a gun, so he, Justin Kinder, Jeremy and Chris got up and ran through the house and out the back door.

---

[3] The stabbing of Anthony Vargas was the subject of separate criminal proceedings. Defendant Castro was not involved in that act or proceeding. The events leading up to the stabbing are described here for context only.

4

By this time, Lillie had returned with a towel to apply pressure to Anthony's wound, just in time to see Jeremy get hit by defendant. Defendant yelled to the people with Anthony to leave him there, and told them they would get what was coming to them. Defendant stepped over Lillie and entered the living room, taking a gun from the waist area of his pants. He screamed and waived the gun around, pointing it at Lillie at one point. Veronica became hysterical, so defendant told her to be quiet. Lillie got up and went into the living room to tell defendant to leave. Defendant wanted Lillie to find the boys who had run away. Defendant then left. It appeared to Lillie that defendant was there to clean up a mess, to fix a mistake made by the other guys.

Defendant, who was 36 years old at the time of the incident, worked as a handyman doing home repairs and odd jobs for Johnny Hernandez and Kimberly Hernandez. On the night of the incident, defendant had gone out to a topless bar with his employers and their driver, returning home at 12:00 a.m. or 12:30 a.m. The Hernandezes lived in the neighborhood where the Walters' residence was located and passed the Walters' house on their way home, where they saw a party going on. Defendant fell asleep on the couch.

A while later, Michael Hernandez, the brother of defendant's employer, came in and yelled something about Skye being jumped or in a fight. Skye was the cousin of Michael Hernandez and defendant's employer.[4] Defendant got his shoes on and ran

---

[4] Skye drove a black SUV.

5

down the street ahead of five or six others to get Skye and find out what had happened. When they arrived in front of the Walters' house, they did not find Skye. No one observed defendant with a firearm.

Defendant testified in his own defense and admitted he went to Lillie Walters' residence. He also admitted striking Jeremy Parck, although he testified he was defending himself when Jeremy rushed at him. Defendant explained he went to the residence looking for Skye, the cousin of his employer, whom he feared was involved in a fight. However, once at Lillie's residence, he never inquired about the whereabouts of Skye. Defendant was arrested more than a year after the incident.

Defendant was charged with assault with a firearm as to Lillie Walters (§ 245, subd. (a)(2), count 1), assault by means likely to produce great bodily injury as to Jeremy Parck (§ 245, subd. (a)(1), count 2), and residential burglary with persons present. (§§ 459, 1203.06, subd. (a)(1).) Respecting counts 1 and 3, it was further alleged that defendant personally used a firearm in the commission of the offenses. (§ 12022.5, subd. (a).) Defendant was tried by a jury and convicted of assault with a firearm (count 1), simple assault as a lesser included offense as to count 2, and burglary with persons present. The jury found all enhancement allegations true.

At sentencing, defendant was sentenced to 180 days in county jail for the simple assault, with credit for time served. The court imposed an aggregate sentence of 10 years in prison calculated as follows: It imposed the upper term of six years for the burglary count, with a consecutive term of four years for the gun use allegation, and stayed a term

6

of three years for the assault with a firearm charge pursuant to section 654, along with a term of four years for the gun use allegation as to that count.**5**

## DISCUSSION

### 1. There is Substantial Evidence to Support the Convictions for Assault with a Firearm and Burglary.

Defendant argues that there is insufficient evidence to support the convictions for assault with a firearm (§ 245, subd. (a)(2)) and residential burglary. We disagree.

#### a. Standard of Review

In reviewing a sufficiency of evidence claim, our role is limited; we determine whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.) On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonable deduce from the evidence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Reversal is unwarranted unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conviction. (*People v. Mason* (2006) 140 Cal.App.4th 1190, 1199.)

---

**5** The abstract of judgment erroneously indicates defendant received concurrent terms for the assault with a firearm and burglary counts. We will therefore order that the abstract be corrected, although neither party has raised this issue.

Substantial evidence must be of ponderable legal significance, reasonable in nature, credible and of solid value. (*People v. Concha* (2008) 160 Cal.App.4th 1441, 1451.) While we must ensure that the evidence is reasonable, credible and of solid value, it is the exclusive province of the judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. (*People v. Smith, supra,* 37 Cal.4th at p. 739.) The uncorroborated testimony of a single witness is sufficient to support a conviction unless it is physically impossible or inherently improbable. (*People v. Duncan* (2008) 160 Cal.App.4th 1014, 1018.)

b.      **The Assault with a Firearm Count**

Defendant argues that the conviction for count 1 must be reversed because there is insufficient evidence that appellant had a firearm, pointing to the fact that not all the witnesses saw a gun and none of the witnesses described the weapon. The fact that not all witnesses saw a gun, or recalled seeing a gun, does not compel reversal.

Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. (*People v. Elliott* (2012) 53 Cal.4th 535, 585, citing *People v. Maury* (2003) 30 Cal.4th 342, 403.) Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

8

The absence of evidence which would normally be forthcoming can undermine the solidity of the proof relied on to support a finding of guilt.  (*People v. Blakeslee* (1969) 2 Cal.App.3d 831, 839.)  However, reversal is not warranted unless it appears that upon no hypotheses whatever is there sufficient substantial evidence to support the conviction.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; *People v. Redmond* (1969) 71 Cal.2d 745, 755.)

Here, although some testimony at trial had to be refreshed using prior statements given to law enforcement investigators, two eyewitnesses, Lillie Walters and Justin Kinder, testified at trial that they observed defendant with a firearm.  In her pretrial statements to police, Veronica stated she also had seen the gun, although she could not recall it at the time of trial.  The interlude in which defendant rushed the porch, punched Jeremy, paced around the living room of Lillie's residence and then departed was very brief.  Thus, the fact the witnesses were unable to describe the weapon does not render their testimony inherently improbable.

Nor does it affect the outcome that other witnesses did not observe the firearm, where not all the witnesses were in a position to see it.  The testimony of the witnesses who observed the defendant with a weapon was not inherently improbable or physically impossible.  In fact, it was corroborated by Jeremy Parck's testimony that he heard someone say that the defendant had a firearm, which prompted Jeremy to run out through the back of the house.

9

Because the circumstances reasonably justify the jury's findings, reversal is not warranted.

### c. The Burglary Count

Defendant argues the evidence is insufficient to support the burglary conviction because there is no evidence he entered the residence with the intent to commit any felony. He points to his own testimony that he entered the house to look for Skye, his employer's cousin, and to his assertion that he did not have a weapon, to support his position. We disagree.

A person is guilty of burglary if he enters any house with the intent to commit a theft or a felony. (§ 459; *People v. Horning* (2004) 34 Cal.4th 871, 903.) The element of the defendant's specific intent at the time of entry is rarely susceptible to direct proof, so it must usually be inferred from all of the attendant facts and circumstances disclosed by the evidence. (*People v. Holt* (1997) 15 Cal.4th 619, 669.) Whether the defendant made entry with the requisite burglarious intent is a question of fact. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.) Where the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal. (*Ibid.*, citing *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245.)

It was for the jury to determine whether the defendant entered the residence with a firearm. It was also for the jury to determine if, after pointing the gun at Lillie, and then waiving the gun around while demanding to know the whereabouts of others, defendant

10

entered with an intent to commit assaults within the residence. The evidence was not inherently improbable, so the conviction will not be disturbed on appeal.

**2.      The Prosecutor's Hyperbolic Comment During Closing Argument Did Not Constitute Misconduct**.

Defendant argues that the prosecutor committed misconduct during closing arguments. We disagree.

A prosecutor has a wide-ranging right to discuss the case in closing argument, including the right to fully state his or her views as to what the evidence shows and to urge whatever conclusions he or she deems proper. (*People v. Panah* (2005) 35 Cal.4th 395, 463, citing *People v. Lewis* (1990) 50 Cal.3d 262, 283.) A prosecutor may vigorously argue his or her case and is not limited to "Chesterfieldian politeness." (*People v. Hill* (1998) 17 Cal.4th 800, 819, quoting *People v. Williams* (1997) 16 Cal.4th 153, 221.) Nevertheless, as a representative of a sovereign, a prosecutor is held to a standard higher than that imposed on other attorneys. (*Hill,* at p. 820.) Thus, prosecutors who engage in rude or intemperate behavior, even in response to provocation by opposing counsel, greatly demean the office they hold and the People in whose name they serve. (*Ibid.*)

However, a prosecutor's intemperate behavior violates the federal Constitution when it comprises a pattern of conduct so egregious that infects the trial with such unfairness as to make the conviction a denial of due process. (*People v. Gray* (2005) 37 Cal.4th 168, 215.) Conduct by a prosecutor that does not render a criminal trial

11

fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to persuade either the court or the jury. (*Id.* at p. 216.)

Applying these principles, courts have held that the use of derogatory epithets to describe a defendant is not necessarily misconduct. (*People v. Tully* (2012) 54 Cal.4th 952, 1021; *People v. Friend* (2009) 47 Cal.4th 1, 32.) To the contrary, a prosecutor is allowed to use such epithets as are warranted by the evidence, as long as the arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury. (*Tully,* at p. 1021, citing *People v. Pensinger* (1991) 52 Cal.3d 1210, 1251.)

Here, defendant points to comments regarding defendant's testimony that he had left the Hernandez house to look for Skye, the cousin of his employer. The prosecutor observed that although it was not defendant's cousin, defendant was the person to go looking for him. The prosecutor further observed that defendant worked for the Hernandezes, and was the muscle for the family, going to clubs with them. The prosecutor concluded that defendant was the family's bodyguard. Defendant objected to the argument.

After the court overruled defendant's objection, the prosecutor questioned why defendant was the first person up and out the door running when someone informed the family that Skye was involved in a fight. The prosecutor explained that it was defendant's job to protect whoever was in the house. Defendant objected again. Finally, after the court overruled the objection to that portion of the argument, the prosecutor

12

continued to explain that the reason no member of the Hernandez family had to go look for Skye was because they paid their dues and the payroll; because the defendant was their "go-to guy," and they went to him and he did his job.

The prosecutor's comments, while somewhat hyperbolic, were based on inferences she could draw from the evidence. During the prosecution's case in chief, Lillie testified that it seemed the defendant was there to clean up the mess, to fix the mistake the other guys had made. The jury also heard Lillie's pretrial interview where Lillie described defendant as "[t]he older gentleman" who acted like the dad or the older brother who was angry about the altercation that had happened. She also described him during this interview as the fixer; the person whose job it was to clean up the mistakes of others.

The jury also heard defendant's own testimony, that he did odd jobs for the Hernandez family, he worked for cash, and he regularly accompanied his employer and the employer's wife when they went to topless clubs. It was defendant who testified that he was out the door and down the street ahead of the others when informed that Skye had been involved in a fight. The jury also heard the testimony of Kimberly Hernandez, the wife of defendant's employer, who indicated that when defendant accompanied the couple on their outings, he would spend the night at their house.

Although there was no direct testimony that defendant was a bodyguard for the Hernandez family, the inference was fairly drawn from the evidence presented. There was no error in overruling the defense objections to the prosecutor's statements.

13

**3.    The Trial Court Did Not Abuse Its Discretion at Sentencing**.

Defendant argues that the trial court abused its discretion in allowing the family of Anthony Vargas to make victim impact statements and in sentencing defendant to the aggravated term.  Regarding the victim impact statements, defendant asserts they were irrelevant because the decedent was not a victim of his (defendant's) crimes.  Regarding the imposition of the upper term, defendant argues the court improperly based its decision on the facts defendant exacerbated the situation involving the stabbing victim by impeding the rendition of aid, and then punching someone and pulling out a gun.  We disagree.

**a.    Standard of Review**

The choice of the appropriate term to be imposed rests within the sound discretion of the court.  (§ 1170, subd. (b); *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1371.) Sentencing courts thus have wide discretion in weighing aggravating and mitigating factors, and may balance them against each other in qualitative as well as quantitative terms.  (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.)  Even a single circumstance in aggravation may justify the selection of an upper term.  (*Ortiz,* at p. 1371.)

We review the court's sentencing decisions under the abuse of discretion standard: A court's exercise of discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that

14

resulted in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

We proceed with our examination of defendant's assertions.

### b. Victim Impact Statements

In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. (§ 1170, subd. (b).) Section 1191.1 expressly authorizes the victim of any crime, or the next of kin of the victim if the victim has died, to attend all sentencing proceedings and express their views concerning the crime, the person responsible, and the need for restitution.

These statutes reflect a long established policy of allowing a sentencing judge to consider responsible unsworn or "out-of-court" information relative to the circumstances of the crime and to the convicted person's life and characteristics. (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754, citing *Williams v. Oklahoma* (1959) 358 U.S. 576, 584 [3 L.Ed.2d 516, 79 S.Ct. 421].)

A defendant is not entitled to the same constitutional protections for evidence submitted in connection with sentencing as apply to evidence presented at trial. (*People v. Roberts* (2011) 195 Cal.App.4th 1106, 1128, citing *People v. Arbuckle, supra,* 23 Cal.3d at p. 754.) The sentencing court may consider a broad range of information,

including responsible unsworn or out-of-court statements concerning the convicted person's life and characteristics. (*Roberts,* at p. 1128, citing *People v. Lamb* (1999) 76 Cal.App.4th 664, 683.)

Whether or not Anthony Vargas was the direct victim of defendant's crime, the court was permitted to consider all the surrounding circumstances of defendant's crime in determining the appropriate sentence. The events leading to the death of Mr. Vargas were inextricably intertwined with the circumstances of defendant's crimes. Defendant, himself, testified that he went to the house where the party had been in search of Skye, whom he believed to have been involved in a knife fight. While defendant was not responsible for the stabbing of Mr. Vargas, defendant's conduct in assaulting people attempting to render aid to the dying young man impacted the Vargas family.

Further, the court's comments indicate that the aggravated term was imposed as punishment for defendant's own conduct, and not as retribution for stabbing. Thus, the statements of the stabbing victim's family did not affect the sentencing decision. Any error in allowing the stabbing victim's family to make statements about the impact of defendant's conduct on their lives was harmless.

### c. Imposition of the Upper Term

In arguing that the court erred in imposing the upper term, defendant focuses on what he presumes was the improper effect of the statements made by the family of Mr. Vargas on the court's sentence choice. He refers to certain facts as improper, that is, that defendant did not render aid to Mr. Vargas, in attacking the sentence. However, he does

16

not address the other factors cited by the court in support of its sentence choice, to wit: that the crime involved threat of great bodily harm, and the acts disclosed a high degree of cruelty, viciousness, and callousness, the victims were particularly vulnerable, and the defendant engaged in violent conduct which indicates he poses a serious danger to society.

For purposes of discussion, we agree that the defendant owed no duty to render aid to the stabbing victim who lay bleeding on the front porch. Nevertheless, defendant's violent conduct supported the other factors in aggravation cited by the trial court. Although the defendant objected to the sentence at the time of the hearing, and objected to the victim impact statements, he did not object to any other specific factor in aggravation recited by the court. Any single one of those factors would support the selection of the upper term. (*People v. Ortiz, supra,* 208 Cal.App.4th at p. 1371, citing *People v. Castellano* (1983) 140 Cal.App.3d 608, 615.)

The court did not abuse its discretion.

## 4. The Abstract of Judgment Must Be Corrected.

The abstract of judgment indicates concurrent sentences for the assault with a firearm and burglary counts, contrary to the court's oral pronouncement of judgment.

The abstract of judgment constitutes the commitment and is the order sending the defendant to prison, and the process and authority for carrying the judgment and sentence into effect; no other warrant or authority is necessary to justify or require its execution. (§ 1213; *People v. Mitchell* (2001) 26 Cal.4th 181, 185, citing *In re Black* (1967) 66

17

Cal.2d 881, 890.) It goes without saying that accuracy is essential in a document that prescribes the execution of sentence and is provided to Criminal Investigation and Identification. (§ 1213, subd. (a).)

This court has the authority to correct clerical errors at any time. (*People v. Mitchell, supra*, 26 Cal.4th at pp. 186-187.) The clerk is directed to amend the abstract of judgment to reflect that the sentence for count 1, and the enhancement therefore, were stayed pursuant to section 654.

## DISPOSITION

The trial court is directed to amend the abstract of judgment so that it properly reflects that the sentence and enhancement for count 1 is stayed pursuant to section 654. The clerk is then directed to forward the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:

MILLER_____
J.

CODRINGTON_____
J.

18