Filed 10/21/20  P. v. Brown CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073157 |
| v. | (Super.Ct.No. RIF1704405) |
| ERIAN JACOB BROWN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Samah Shouka, Judge. Affirmed.

Erian Jacob Brown, in pro. per.; and David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Erian Jacob Brown of first degree murder and attempted carjacking. The jury also found he personally discharged a firearm resulting in a death, and that the murder was committed during an attempted carjacking. The trial court

1

sentenced Brown to life without the possibility of parole plus a consecutive 25 years to life for the firearm use enhancement.

Brown appealed the judgment. His attorney filed a brief informing this court they were unable to identify any errors and asking us to perform an independent review of the record. Brown filed a personal supplemental brief arguing, in essence, that there was insufficient evidence to support the judgment, among other issues. Based on our independent review of the record, we find no error and affirm.

I

FACTS

On September 1, 2017, at 2:00 a.m., Daniel D. drove his fiancé to the emergency room because she was feeling sick. After dropping her off and spending some time in the hospital, Daniel left to get money from an ATM to pay his fiancé's co-pay. Daniel told his fiancé he was going to a nearby Chase Bank.

Around the same time, Marcella E. was working out at a gym on Magnolia Avenue. The gym's roll-up garage style doors faced the parking lot and street and were open at the time. Marcella heard five gunshots. Employees of the gym went to close the curtains and doors, but before they could do so Marcella saw two men run past. Marcella was about 14 feet from the men when they ran past. One of the men was black. One of the two—Marcella wasn't sure whether it was the black man or the other man—put a black sweater on over a red shirt. The other wore black pants and a white shirt. Marcella did not see the men's faces.

2

Around 4:00 a.m., Riverside police officers arrived at the Chase Bank on Magnolia Avenue in response to reports of gunshots. They found Daniel slumped over unconscious in the driver's seat of his car, which was backed into a tree. The officers saw two bullet holes in the driver's side door and two in the driver's side window. They also saw Daniel had two gunshot wounds, one in his left upper back and one in his left upper arm. The officers also found five spent nine millimeter shell casings. Paramedics arrived and pronounced Daniel dead at the scene.

At about 5:00 a.m. Brown called his mom, Jacqueline M., and asked her for a ride. He said he was in Riverside, at an apartment complex on Polk Street. Jacqueline drove from Yucaipa to Riverside to pick up her son and his friend Robert. On the way, she drove down Magnolia Avenue and passed the police investigating Daniel's death. She dropped Robert off in San Bernardino, dropped Brown off, then went to work. At work, Jacqueline's coworker observed her looking tired and crying. Jacqueline told the coworker something happened with one of her children. The coworker inquired whether it was her son Chris, and Jacqueline responded it was not. Jacqueline eventually told the coworker one of her sons killed somebody.

However, in statements to the police Jacqueline said she didn't learn Brown was involved in the shooting until she spoke to him late that night. Jacqueline asked Brown if he was at the shooting. She said Brown told her he and Robert were trying to get a ride to San Bernardino when Robert pulled a gun on him and told him to try to get a car. Brown said Robert ordered him to try to get Daniel's car. Brown approached the car, tried to

3

open the door and told Daniel to give him the car. Brown said he told Daniel he didn't want to hurt him, but Robert started shooting before Brown could get Daniel to get out of the car. After this conversation, Jacqueline sent Brown to live with her niece in Nevada.

An autopsy revealed Daniel suffered three gunshot wounds, though one was superficial. The wound to his left upper arm continued through his chest cavity, penetrating his left lung and heart. The left upper back wound continued through his shoulder and neck before resting in his spine. Daniel likely died within minutes of the wounds due to significant blood loss and organ injury.

Forensic specialists recovered DNA samples from the door handle on the outside of Daniel's car. These samples contained a mix of four peoples' DNA, two of whom were Daniel and Brown.

Police reviewed Brown's Facebook page and found photos of Brown in a red jacket or sweater posted a few months before the shooting. Police found a post from about a week before the shooting where Brown said " 'Never catch me walking on freeway from L.A. I'm about to take somebody's car.' "

Police also obtained surveillance footage from businesses around the site of the shooting. The videos showed two men in the area, one of whom was wearing red clothing which looked "considerably like" the jacket or sweater in Brown's Facebook photos. The videos showed Daniel's car approach the bank, and showed Daniel use the ATM. They also showed two people crossing Magnolia Avenue towards the bank and leaving the area

4

of the bank about 90 seconds later. Another camera showed Jacqueline's car in the area at about 5:48 a.m.

Officers arrested Brown in Las Vegas and questioned him in custody. Brown initially denied any involvement in the shooting, but eventually admitted he was in the area with someone else known as "Infant." He told police Infant wanted to get a car. The two of them walked around looking for a car, until they saw Daniel pull up to the bank. The two approached Daniel's car as he was walking back, and Infant told him "I need your car." Daniel then "ran inside his car and tried to start it," at which point Brown heard gunshots. Brown said once he heard the gunshots, he got scared and ran away. He denied he had a gun, denied shooting Daniel, and denied ever touching Daniel's car. The police showed Brown one of the Facebook photos of him wearing the red sweater or jacket. Brown claimed it was Infant's, and that he was only wearing it for the photo.

However, Brown then admitted he felt remorse about the situation. After further prodding from police Brown admitted he shot two or three times. Brown said he didn't know why he shot, that Daniel "wasn't threatenin' me. He wasn't tryin' to charge me, none of that. I don't know what it was." Brown also admitted he "[p]robably" tried to get in the car. Brown said the gun belonged to Infant, they were both armed, and Infant took the gun back after the shooting.

On April 29, 2019, the Riverside County District Attorney charged Brown by information with murder (Pen. Code, § 187, subd. (a), unlabeled statutory citations refer to this code) and attempted carjacking. (§ 664/215, subd. (a).) The information also

5

alleged Brown personally discharged a firearm resulting in great bodily injury or death in the commission of both crimes. (§ 12022.53, subd. (d).) It further alleged the murder was committed during a carjacking, a special circumstance. (§ 190.2, subd. (a)(17)(L).)

Brown was tried by jury and convicted on all counts. On May 9, 2019, the jury found the murder was in the first degree, and the enhancements and special circumstance were true. On June 21, 2019, the trial court sentenced Brown to life without the possibility of parole for the murder, plus 25 years to life for the firearm use enhancement. It stayed imposition of sentence for the carjacking and the enhancement under section 654.

Brown timely appealed the judgment.

II

ANALYSIS

We appointed counsel to represent Brown on appeal, and counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and asking us to conduct an independent review of the record.

Defense counsel's brief raised two potential issues for our consideration: whether the People laid sufficient foundation to establish that the Facebook photos introduced at trial could be authenticated as Brown's, and whether the trial court erred by failing to dismiss two jurors who discussed the history of carjacking laws and punishments outside the jury room. We offered Brown an opportunity to file a personal supplemental brief,

and he did so. In his personal supplemental brief, Brown argues the judgment was not supported by substantial evidence.[1]

When reviewing a sufficiency of the evidence claim, an appellate court determines whether, on the entire record, " ' "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738-739; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) In doing so, we view the evidence in a light most favorable to the People and presume the existence of every fact the trier could reasonably deduce from the evidence which supports the judgment. (*People v. Johnson*, at p. 576, citing *People v. Mosher* (1969) 1 Cal.3d 379, 395.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331, quoting *People v. Redmond* (1969) 71 Cal.2d 745, 755.) "We resolve all evidentiary conflicts and questions of credibility 'in favor of the verdict . . . .' " (*People v. Brady* (2018) 22 Cal.App.5th 1008, 1014, quoting *People v. Cardenas* (2015) 239 Cal.App.4th 220, 226-227.)

"Substantial evidence must be of ponderable legal significance, reasonable in nature, credible and of solid value." (*People v. Briscoe* (2001) 92 Cal.App.4th 568, 585.)

---

[1] Brown also argues there were errors in the imposition of restitution and that police coerced his confession by promising leniency for his mother. With regard to the restitution issue, Brown already attempted to raise this issue on appeal, and voluntarily declined to pursue it because it had not been raised with the trial court first. With regard to Brown's claim his confession was coerced, Brown has forfeited his right to challenge the admission of his statements to police by failing to object at the trial court. (*People v. Ray* (1996) 13 Cal.4th 313, 339 [involuntary confession claim based upon improper inducement forfeited for failure to object in trial court].)

" 'The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable.' " (*People v. Duncan* (2008) 160 Cal.App.4th 1014, 1018.)

"The standard of review is the same in cases in which the People rely mainly on circumstantial evidence." (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) Circumstantial evidence may be sufficient on its own to prove guilt beyond a reasonable doubt. (*Id.* at p. 793.) Just because the circumstances may also reasonably support a different conclusion than the one drawn by the trier of fact does not warrant reversing the judgment. (*Ibid.*)

Brown argues in his supplemental brief the evidence of conviction was insufficient because (1) the witnesses were unable to identify either of the two people caught on camera running away from the bank, (2) there was some forensic issue regarding the direction Daniel was shot from, (3) police didn't find the murder weapon and the shell casings at the scene didn't have Brown's fingerprints, (4) no witness was able to identify Brown, and (5) there is no footage of the actual shooting.

While Brown correctly identifies some gaps in the People's case, there was still sufficient evidence for a jury to conclude he was at minimum an active participant in the shooting. Forensic specialists found Brown's DNA at the scene of the crime. Brown confessed to police he was there and that he shot at Daniel. Jacqueline's testimony corroborated that Brown was near the scene of the crime around the time of the crime. Jacqueline also said Brown confessed he was involved in the shooting, and Jacqueline

8

told a coworker Brown killed somebody. The camera footage that did exist showed at least one of the suspects wearing clothing similar to clothing Brown wore in photos posted to social media. In short, there was abundant physical and circumstantial evidence placing Brown at the scene of the crime, and abundant testimonial evidence that Brown was the shooter. Viewing the evidence in the light most favorable to the judgment, there was sufficient evidence for the jury to conclude Brown killed Daniel.

We have independently reviewed the entire record for potential error as required by *People v. Kelly* (2006) 40 Cal.4th 106 and find no arguable error that would result in a disposition more favorable to Brown.

III

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
J.

We concur:

RAMIREZ _____
P. J.

MILLER _____
J.

9