Filed 10/8/21 P. v. Campos CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074824 |
| v. | (Super.Ct.No. SWF1800223) |
| ALFONSO CAMPOS, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Mark Mandio, Judge. Affirmed as modified.

Jason J. Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Matthew Mulford, Sharon L. Rhodes, Lise S. Jacobson, and Joy Utomi Hartmann, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2018 Alfonso Campos, Jr., pled guilty to felony vandalism and misdemeanor reckless driving charges. The court sentenced him to three years' felony probation as part of a plea agreement. It also imposed a probation condition requiring Campos to pay $108,487.36 in restitution to his victim. Campos appealed the restitution condition, arguing it doesn't meet the standard for a valid probation condition under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and that it violated his 14th Amendment due process rights. In supplemental briefing, Campos also argues that under recently enacted Assembly Bill No. 1950 (2019-2020 Reg. Session) (Stats. 2020, ch. 328, §§ 1-2) (Assembly Bill 1950) his probation should be reduced to two years. We affirm as modified.

## I. FACTS[1]

On July 3, 2017, Campos and the victim, Eric, were both driving northbound on I-215. Eric was driving a motorcycle. Campos was driving recklessly, swerving through traffic, tailgating, and passing other drivers on the right shoulder and center median. At some point, Campos pulled up behind Eric and began tailgating him, nearly hitting him. Eric moved into the middle lane, and Campos pulled up alongside him. The two exchanged hand gestures, and Campos indicated for Eric to pull over. On the side of the road, their argument became physical. Campos reported Eric knocked him down and continued to hit him, while Eric claims Campos was also hitting him. Eric eventually stopped fighting, gathered Campos's belongings from the ground and handed them to

---

[1] The facts underlying Campos's convictions are taken from the police reports attached as exhibit 1 to Campos's successful motion to augment the record.

2

him, telling him to leave. Campos got back in his car, drove into Eric's motorcycle, then left.

When the police responded to the scene, Eric did not appear to be hurt and he didn't report any physical injuries. He said Campos hit his motorcycle with his car and he "thought that he was going to get ran over" in the process. However, when he spoke to the police again, on July 31, 2017, this time with his lawyer present, he said Campos had also hit *him* with his car, and injured him, when he ran into the bike. Eric said he suffered injuries to both ankles and that he had back pain and numbness in his neck and down his back to his left leg and foot, including his left bicep and groin.

The police also questioned six eyewitnesses. Three saw the physical altercation only. However, three others saw Campos pull away and hit Eric's motorcycle. One said she saw Campos hit the motorcycle and didn't mention whether Eric was hit as well. The two others, though, affirmatively noted that Campos only hit the motorcycle and did not hit Eric. One of these two witnesses stopped about 100 yards away when he saw the two fighting. He saw Campos intentionally run over the motorcycle, but "never saw the car strike the rider or the rider fall to the ground." The other witness was passing by when he saw Campos hit the bike, and followed Campos in order to get his license plate number. He said Campos did not hit Eric and Eric was standing far enough from his bike that he would've avoided being hit.

3

On September 6, 2018, Campos pled guilty to misdemeanor reckless driving (Veh. Code., § 23103, subd. (a)) and felony vandalism. (Pen. Code, § 594, subd. (a).) Pursuant to a plea agreement, the trial court placed Campos on three years' felony probation.

As a condition of probation, the court ordered Campos to pay victim restitution, with the amount to be determined by probation and any dispute as to the amount resolved in court. Campos provided documentation of his alleged losses to probation on March 26, 2019, and again on December 12, 2019. Probation recommended the amount of restitution should be $108,487.36, consisting of $103,063.71 in medical bills, $500 for an auto insurance deductible, and $4,923.65 for motorcycle accessories. The court adopted probation's recommendation and ordered Campos to pay his victim $108,487.36 in restitution as a condition of probation.

On February 20, 2020, Campos timely appealed.

Assembly Bill 1950 went into effect on January 1, 2021, while Campos's appeal was pending. After it went into effect, Campos requested permission to file a supplemental brief addressing the retroactive application of Assembly Bill 1950, which we granted.

## II.  ANALYSIS

A.    The Restitution Condition

Campos makes two arguments for why the restitution condition is invalid. First, he argues the restitution fine violated the limitations on probation conditions set out in *Lent* because Eric's medical bills were unrelated to Campos's criminal conduct as he didn't

actually injure Eric. Second, he argues it violates his due process rights because the court relied on Eric's unreliable statement in determining the amount of restitution. We disagree with both arguments.[2]

1. Due Process

We first address whether the record allowed the trial court to conclude Eric was actually injured or if such a determination violated Campos's due process rights, before determining whether awarding restitution for those injuries was appropriate under *Lent*.

"[T]he imposition of a particular condition of probation is subject to review for abuse of that discretion. 'As with any exercise of discretion, the court violates this standard when it imposes a condition of probation that is arbitrary, capricious or exceeds the bounds of reason under the circumstances. [Citation.]' " (*People v. Martinez* (2014) 226 Cal.App.4th 759, 764, disapproved of on other grounds in *People v. Bryant* (2021) 11 Cal.5th 976.) "No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 (*Gemelli*).)

When it comes to imposing restitution, "[t]he scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited: ' "A defendant's due process rights are protected when the probation report gives notice of the amount of restitution claimed . . . , and the defendant has an opportunity to challenge the

_____

[2] The People also argue Campos forfeited his right to challenge the restitution order. Because we conclude Campos's appeal fails on the merits, we don't address the People's forfeiture arguments.

5

figures in the probation report at the sentencing hearing." ' " (*People v. Cain* (2000) 82 Cal.App.4th 81, 86.) That being said, "[a]lthough not all the procedural safeguards required at trial also apply in a sentencing or probation hearing, such a hearing violates due process if it is fundamentally unfair. [Citation.] 'Reliability of the information considered by the court is the key issue in determining fundamental fairness' in this context. [Citation.] A court's reliance, in its sentencing and probation decisions, on factually erroneous sentencing reports or other incorrect or unreliable information can constitute a denial of due process." (*People v. Eckley* (2004) 123 Cal.App.4th 1072, 1080.)

" ' " ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' " ' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.) "Once the victim makes a prima facie showing . . . the burden shifts to the defendant to disprove the amount of losses claimed by the victim. [Citation.] The defendant has the burden of rebutting the victim's statement of losses." (*Gemelli*, *supra*, 161 Cal.App.4th at p. 1543.) " '[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.' " (*People v. Keichler*, at p. 1045.) " 'In reviewing the sufficiency of the evidence, " '[t]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." ' " (*Ibid.*) "Substantial evidence must be of ponderable legal significance, reasonable in nature, credible and of solid

6

value." (*People v. Briscoe* (2001) 92 Cal.App.4th 568, 585.) " 'The uncorroborated testimony of a single witness is sufficient . . . unless the testimony is physically impossible or inherently improbable.' " (*People v. Duncan* (2008) 160 Cal.App.4th 1014, 1018 (*Duncan*).)

At the restitution hearing here, the People presented the probation reports summarizing Eric's claimed losses. The probation reports didn't contain the underlying medical bills, merely a summary of the total amount claimed. Campos presented the police report. Neither party presented any other evidence. Campos chose not to call or question any witnesses, or even question Eric himself, though it was his right to do so and his burden to disprove the prima facie evidence of loss in the probation report. This left the trial court to weigh the credibility of Eric's claims based solely on the reported statements in the police report. After hearing argument, the court noted there was conflicting evidence about whether Campos had hit Eric with his car but credited Eric's statement that he had been hit.

The court spent the balance of the hearing discussing with the parties whether the probation reports provided a sufficient evidentiary basis for determining Eric's damages, or whether additional documentation was necessary. Presuming the probation department had carried out its duty to make an accurate restitution recommendation, the court concluded the probation reports were sufficient to establish Eric's damages. In accepting probation's recommendation, the court also noted "there's no defense evidence here. The

defense also could have subpoenaed the probation officer, as well as the documents they were relying on, and I could have examined them. Neither side has chosen to do that."

Pointing to the statements of the witnesses who said Campos had not hit Eric with his car, Campos argues the evidence is insufficient to support the trial court's conclusion that Eric was injured. But this argument overlooks our standard of review. On appeal, we may not reweigh the evidence, and the account of one witness may be sufficient to support the trial court's determination—unless that witness's account is " 'physically impossible or inherently improbable.' " (*Duncan*, *supra*, 160 Cal.App.4th at p. 1018.). Here, though Eric was the only witness to say he was hit, he was also in the best position to observe what happened (because it happened to him). We assume the trial court found Eric's second statement to the police a more credible account of events than his first or the statements of the other witnesses. And there is a reasonable basis for doing so. Two of the three witnesses were driving on the freeway when they saw the altercation, and the other was about a football field away when he stopped to watch the events unfold. Based on these perception issues, the court could reasonably conclude that Eric was in the best position to observe what happened to him and his account was the most reliable.

Campos argues Eric's second statement to police cannot constitute substantial evidence to support the court's factual finding because Eric wasn't under oath at the time, and thus his uncorroborated statements are not technically testimony. He argues that this fact makes his case distinguishable from those cases which hold that the uncorroborated testimony of a single witness is sufficient to prove a critical fact. (See, e.g., *Duncan*,

8

*supra*, 160 Cal.App.4th at p. 1018.) But this argument ignores that all of the evidence before the court was unsworn testimony, including the eyewitness statements Campos relies on. Thus, all the evidence the court relied on was of the same value from a legal perspective, and there was no purely legal basis to conclude Eric's unsworn statements were less credible than the eyewitness's unsworn statements.

Though it is a close call, we conclude substantial evidence supports the trial court's determination that Campos was responsible for Eric's injuries and medical bills. We agree with Campos that the evidence here is relatively slim, but we cannot conclude the court acted irrationally in believing Eric's second account of the incident or in relying on probation's determination as to the validity and credibility of his claimed medical expenses. Perhaps more importantly, Campos didn't attempt to dispute these medical expenses, instead focusing on the impropriety of awarding medical expenses at all.

2. Validity of the Condition under *People v. Lent*

"Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' [Citation.] This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379, quoting *Lent*, *supra*, 15 Cal.3d at p. 486, fn. 1.)

9

Both the California Constitution and Penal Code section 1202.4 entitle victims of a crime to restitution from the person convicted of that crime. (Cal. Const., art. I, § 28, subd. (b).) However, "the scope of a trial court's discretion is broader when restitution is imposed as a condition of probation," rather than under Penal Code section 1202.4. (*People v. Giordano* (2007) 42 Cal.4th 644, 663, fn. 7.) For instance, while Penal Code section 1202.4 limits restitution awards to the victim's actual economic losses, when imposed as a condition of probation, "[t]here is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) Indeed, "[u]nder certain circumstances, restitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal." (*Ibid.*)

Under this rule, the trial court may impose restitution for uncharged criminal conduct or even non-criminal conduct so long as it is reasonably related to the defendant's actual criminal conduct or potential future criminal conduct. Given this, we cannot say the court's decision to impose restitution here fell outside its broad discretion. It is true that Campos was not charged for injuring Eric. However, this fact alone is not dispositive, since courts can impose restitution for uncharged criminal acts. As discussed above, the court here implicitly found Campos did actually injure Eric while in the

10

process of vandalizing his motorcycle and generally driving recklessly. Thus, to the extent the court found Campos was responsible for Eric's injuries, those injuries resulted from the same conduct which gave rise to Campos's conviction. A condition requiring Campos to pay for injuries he caused during his charged criminal conduct is about as reasonably related to Campos's criminal conduct as it is possible to be.

Accordingly, we affirm the court's order requiring Campos to pay $108,487.36 in restitution to Eric as a condition of probation.

B.      Assembly Bill 1950

Campos argues Assembly Bill 1950 applies to him and requires we reduce his sentence from three years' probation to two. The People agree Assembly Bill 1950 applies in this case, but argue remand is necessary to allow the trial court to fully resentence Campos. We agree Campos is entitled to the ameliorative benefits of Assembly Bill 1950. We also agree with Campos that the appropriate remedy is to reduce his probation term without remanding.

Assembly Bill 1950 went into effect on January 1, 2021, and amended Penal Code section 1203.1 to limit the probation period for any felony violation to two years. (Pen. Code, § 1203.1.) "When an amendatory statute either lessens the punishment for a crime or . . . ' "vests in the trial court discretion to impose either the same penalty as under the former law or a lesser penalty," ' it is reasonable for courts to infer, absent evidence to the contrary and as a matter of statutory construction, that the Legislature intended the amendatory statute to retroactively apply to the fullest extent constitutionally

11

permissible—that is, to all cases not final when the statute becomes effective." (*People v. Garcia* (2018) 28 Cal.App.5th 961, 972, italics omitted.) Two other courts have recently found that this presumption of retroactivity applies to Assembly Bill 1950, and therefore probationers whose cases were not final at the time Assembly Bill 1950 went into effect are entitled to its ameliorative effects. (See *People v. Sims* (2021) 59 Cal.App.5th 943, 956-958 (*Sims*); *People v. Quinn* (2021) 59 Cal.App.5th 874, 879-885 (*Quinn*).)

We find these cases persuasive, and because Campos's conviction was not final as of the effective date of this change, he is entitled to the ameliorative benefits of Assembly Bill 1950. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306 [" '[F]or the purpose of determining retroactive application of an amendment to a criminal statute, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed.' "].) Moreover, the People concede he is entitled to such retroactive application.

The only remaining issue is the exact remedy to which Campos is entitled. Campos argues we can and should reduce his probation period from three years to two on our own. The People argue we must remand to allow the trial court to resentence Campos. The People point out that the court in *Sims* retroactively applied Assembly Bill 1950 but concluded the proper remedy was to remand. However, we note that the court in *Quinn* concluded the opposite. Moreover, neither *Quinn* nor *Sims* explained their reasoning for their chosen disposition in any detail. Nevertheless, the People argue the *Sims* approach is the correct one because "[m]erely striking any portion of the

12

probationary term that exceeds two years would deprive the trial court and the parties of a necessary determination of the status of Campos's probation."

We are unpersuaded. The People's argument conflates reduction of the sentence with termination of probation. Reducing Campos's probation period would not deprive the trial court of its authority to determine whether Campos successfully completed probation or whether a violation during the proper probationary period justifies revocation or tolling. Nor would it limit the People's ability to contest termination, as the trial court retains jurisdiction to modify or terminate probation. (Pen. Code, § 1203.3, subd. (a); *Quinn*, *supra*, 59 Cal.App.5th at pp. 884-885 & fn. 6.)

Accordingly, we conclude the proper remedy is to reduce Campos's probationary term without remand.

## III.  DISPOSITION

We modify the order granting probation reducing the term to two years. We direct the trial court to correct the minute order to reflect the imposition of a two-year term of formal probation, and to notify probation of the change to defendant's probationary term. In all other respects, we affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH                
J.

We concur:

McKINSTER            
Acting P. J.

MENETREZ            
J.

13