### The STATE of Delaware,

### v.

### Keith A. JACKSON, a/k/a James A. Weston, Defendant.

### I.D. No. 0602014308.

Superior Court of Delaware, Kent County.

Submitted: Feb. 6, 2007.
Decided: Feb. 7, 2007.

Alexis Slutsky, Esq., Deputy Attorney General, State of Delaware, Wilmington, DE, for the State.

Kevin M. Howard, Esq., Young, Malmberg & Howard, Dover, DE, for Defendant.

## OPINION

YOUNG, J.

This is the Court's Opinion on Defendant's Motion to Suppress the evidence of plastic baggies (for these purposes: drug paraphernalia) purported to have been discovered by the Delaware State Police during a search of Defendant's home.

### FACTS

On February 16, 2006, the Police, having arrested Defendant on suspicion of involvement in illegal controlled substance activity, placed Defendant into the police car parked adjacent to Defendant's home. Defendant was, at that time, handcuffed and involuntarily detained in that vehicle. Defendant was a co-tenant of that home, located at 185 South Governors Boulevard, Dover, Delaware, with one Cassandra Maddox. With Defendant so detained, the investigating officer, Cpl. Hake, asked the co-tenant, Cassandra Maddox, for permission to conduct a warrantless search of Defendant's home. That co-tenant consented to the requested search. Thinking the consent of any one co-tenant was sufficient to provide legitimate access to the home, the officer believed that a warrantless search was appropriate.

The search was hindered, however, because the entrance to the home was locked. Accordingly, Cpl. Hake returned to the vehicle in which he was detaining the handcuffed Defendant, and demanded the Defendant's keys. While there is a suggestion that the demand for the keys may have had other bases, the timing and location of the request, in the presence of the locked entrance confronting the officer, the demand's being made leads logically, if not absolutely, to the process of conducting the warrantless search.

At this point, the officer, according to Defendant, requested consent to search the house, and the Defendant unequivocally refused to give consent. Cpl. Hake's recollection of the circumstances did not contain any such request or express refusal. The officer ultimately did obtain the keys located in Defendant's pants pocket after an incident variously described by the parties as a lack of consent or a physical struggle or something in between.

## DISCUSSION

We are, therefore, confronted with the question of the legality of the warrantless search. The Fourth Amendment, of course, provides for people the right to be secure in their houses against unreasonable searches. "No matter how humble the home, no matter that the wind and rain may come in, the King of England may not enter." This is the expectation of privacy protected by our Constitution. Also recognized, however, are exceptions such that all warrantless searches are not, *ipso facto*, unreasonable. Among those exceptions is a search conducted following a voluntary consent to search by the person whose home is subject to this governmental action. Had Defendant stood at his

threshold, and, following Cpl. Hake's unthreatening request, invited the officer in, this issue certainly would not arise.

That is not the case here, though. In the matter under consideration, Cpl. Hake detained Defendant in the police car somewhat removed from the entrance. The officer then asked the Cassandra Maddox, given for these purposes to be the co-tenant of the home, for consent. That agreement was, evidently, freely given—not by Defendant, but by the co-tenant. In this case, the investigating officer did, as a matter of fact, have a reasonable belief that the co-tenant had common control of the premises. Pursuant to *Illinois v. Rodriguez,*[1] this warrantless search would appear to be within the "consent" exception, just as Cpl. Hake presumed.

That concept, however, was refined in *Georgia v. Randolph.*[2] There, the Supreme Court held (at p. 122–23, 126 S.Ct. 1515) that "a physically present inhabitant's refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant."

This presents two questions in this case: (1) was Defendant physically present, and (2) did Defendant object to the search?

The former is considered in *Randolph.* That Court determined that, "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search." Here, the "potential defendant" was not at the door, he was detained in the police car. The Court noted "whereas the potential defendant, nearby but not invited to take part in the threshold colloquy, loses out." In this situation, the Defendant was not "in the threshold" for any colloquy at all. Hence,

1. 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)

2. 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006)

he did not partake in the discussion. Thus, on the basis of that bit of language alone, the Defendant would lose his suppression motion.

■ The *Randolph* Court goes on, though, to consider a situation where the potential defendant could not express an objection to consent, because of his inability to refuse. That is, while a potential defendant's absence from the scene alone means that he "loses out", that is true only: "so long as there is not evidence that the police have removed the potential defendant from the entrance for the sake of avoiding possible objection." If, therefore, the potential defendant is removed as described by the police, the consent of the co-tenant will not provide for the consent permitting a warrantless search.

Unquestionably, the police removed Defendant to the detaining police car. Whether that was literally "from the entrance" or not does not seem to be critical to the concept, since it is a removal from the significant area. Of more concern, though, is the stated requirement: "for the sake of avoiding possible objection." No express evidence was presented on that point. Nevertheless, the subjective interest of the officer seems less important than the effect upon the potential defendant. Here, he was removed involuntarily from the place where, as a home occupant, he was capable of making a threshold refusal. Thus, whatever Cpl. Hake specifically had in his mind, from the perspective of the home occupant/potential defendant, he was removed involuntarily from the "natural" place for making an objection to the requested search.

Accordingly, the Court holds that Defendant was "physically present."

■ The latter question, then, is whether or not Defendant objected to the consent. According to Defendant, he was asked for his consent to the search, and refused it. That testimony was disputed, with the addition that Defendant had prior convictions reflecting upon his credibility. For purposes of this case, a finding of an express question followed by an express refusal is not necessary.

The testimony of Cpl. Hake was clear that Defendant's door was locked, and that he needed Defendant's keys to gain entry to the Defendant's home. He was equally candid in that he requested the keys "to gain entry." Further, there was no question that Defendant's keys, located in his front pants pocket, were not voluntarily handed over to the officer. Indeed, the police report, noted in the record by the State, referred to Defendant's grabbing the officer, with force sufficient to break the officer's skin, in an effort to prevent the officer from obtaining possession of the keys. Those actions by the officer and the Defendant reflect a clear absence of consent. It would appear to strain credibility beyond the breaking point to consider this scenario as anything but an objection to any search.

Therefore, the Court holding that Defendant refused consent to search his home, in which he had the constitutionally protected anticipation of privacy, the warrantless search in this case was unreasonable. Accordingly, all evidence of the alleged drug paraphernalia found to be located under Defendant's bedroom mattress will be suppressed. Defendant's Motion is **GRANTED.**

SO ORDERED.