Filed 11/1/13  P. v. Smith CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>ROBERT LAWRENCE HUFFMAN SMITH,<br><br>    Defendant and Appellant. | A136446<br><br>(Sonoma County Super. Ct. Nos. SCR-600242 & SCR-614245) |

Appellant Robert Lawrence Huffman Smith appeals from his convictions in two criminal cases.  The sole basis for his appeal is that the trial court improperly denied, in each case, his motion to suppress certain evidence under Penal Code section 1538.5.  We affirm.

PROCEDURAL BACKGROUND

After the trial court denied his motion to suppress in case No. SCR-600242, appellant pled guilty to one count of possession of heroin for sale (Health & Saf. Code, § 11351) in January 2012.  In February, while out of custody pending sentencing, appellant was arrested and new charges were brought in case No. SCR-614245.  The trial court denied his motion to suppress in this case as well.  After a jury trial, appellant was convicted of one count of selling heroin (Health & Saf. Code, § 11352, subd. (a)), one count of child endangerment (Pen. Code, § 273a, subd. (b)), and one count of obstructing a peace officer (*id.*, § 148, subd. (a)(1)).  In August, appellant was sentenced in both cases to an aggregate term of nine years' imprisonment.

1

DISCUSSION

Appellant's sole challenge on appeal is to the trial court's denial of his two suppression motions. "As the finder of fact in a proceeding to suppress evidence (Pen. Code, § 1538.5), the superior court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable. [Citation.] Accordingly, in reviewing [a] suppression order, we consider the record in the light most favorable to . . . respondents since 'all factual conflicts must be resolved in the manner most favorable to the [superior] court's disposition on the [suppression] motion.' [Citation.]" (*People v. Woods* (1999) 21 Cal.4th 668, 673 (*Woods*).) While " 'we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, . . . we exercise our independent judgment in determining the legality of a search on the facts so found. [Citations.]' [Citation.]" (*People v. Lomax* (2010) 49 Cal.4th 530, 563.)

I. *Case No. SCR-600242*

A. *The Suppression Hearing*

At the suppression hearing, Santa Rosa Police Officer Macias testified as follows. On March 28, 2011, he was patrolling a hotel parking lot known to have a high volume of illegal drug activity. He was in uniform and in a marked police car. Around 9:30 p.m., Macias saw in the parking lot an individual he knew to be Eric Aiello. Four months earlier, Aiello told Macias that he had purchased illegal drugs in that parking lot. On March 28, Aiello walked to the edge of the hotel parking lot and crossed to the adjacent property, the back of a gas station parking lot, where a parked car was waiting. Aiello, while holding cash, reached into the passenger side window of the car. When he withdrew his hand it no longer held cash, and it appeared to Macias that Aiello had received "something" in exchange for the cash.

Macias pulled his patrol car behind the parked car and activated his emergency lights and spotlights. In response, Aiello started quickly walking away from Macias and appeared to toss something away as he walked. The driver and only occupant of the

2

parked car, subsequently identified as appellant, started the car and put it in drive. Macias twice told appellant to stop and exit the car, the second time adding that he had already given appellant's license plate number to incoming units. Appellant exited the car and Macias handcuffed him, telling appellant he was being detained but was not under arrest. Before appellant exited the car, Macias saw a large amount of cash on his lap.

Aiello also stopped and was handcuffed. In the course of conducting a patdown search of Aiello, Macias located items indicative of drug use. Macias asked Aiello whether he was buying drugs from appellant, and Aiello responded that he was paying appellant a debt. Macias's patdown search of appellant did not reveal any indicia of criminal activity. However, when Macias looked in the windows of appellant's car, he saw in plain view suspected drug paraphernalia and a portable safe.

Macias subsequently conducted a search of the vehicle and located over 100 empty syringes, a cell phone with text messages indicating the owner was involved in drug sales, and over $500 in cash. After being confronted with the results of a canine search indicating the scent of drugs on the driver's seat, appellant admitted to having drugs on his person and produced more than 50 "baggies" containing a substance later identified as heroin.

Neither appellant nor Aiello testified at the suppression hearing.

B. *Analysis*

Appellant argues (1) his initial detention was not reasonable, and (2) the subsequent vehicle search was not reasonable. We conclude that both the detention and the vehicle search were reasonable, and that appellant's motion to suppress was properly denied.

1. Detention

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).)

3

Macias witnessed an exchange of cash for something in a location known for illegal drug activity. One of the individuals involved in the exchange, Aiello, previously told Macias that he had purchased illegal drugs in that same location. Then, when Macias turned on his patrol car's emergency lights and spotlight, both appellant and Aiello took evasive acts. Given the totality of these circumstances, Macias's suspicion that appellant had just engaged in an illegal drug sale was reasonable. (See *Illinois v. Wardlow* (2000) 528 U.S. 119, 124 (*Wardlow*) ["nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"]; *Souza*, *supra*, 9 Cal.4th at p. 227 ["flight in response to the appearance of a uniformed officer or a marked patrol car ordinarily is behavior that police may legitimately regard as suspicious, and therefore also can be a key factor in establishing reasonable cause to detain"]; *id*. at p. 240 ["An area's reputation for criminal activity is an appropriate consideration in assessing whether an investigative detention is reasonable under the Fourth Amendment."]; *People v. Methey* (1991) 227 Cal.App.3d 349, 358 [knowledge of individual's prior criminal activity is appropriate factor in determining reasonableness of detention], disapproved on another ground by *Schlick v. Superior Court* (1992) 4 Cal.4th 310, 315.) We reject appellant's arguments to the contrary as explained below.

Appellant challenges the trial court's finding that Macias witnessed Aiello receive something in exchange for cash. But Macias's uncontradicted testimony that he witnessed something exchanged for cash amply supplies substantial evidence for the trial court's finding.

Appellant attempts to undermine the relevance of Macias's testimony that the location was known for illegal drug activity by arguing only the hotel parking lot was so known and the exchange took place in the neighboring gas station parking lot. However, Macias testified to his experience with illegal drug activity taking place in a corner of the hotel parking lot or its "direct proximity," indicating that the area known for drug activity extended beyond the formal property line of the hotel parking lot. Moreover, it would not be unreasonable for an officer to conclude that drug trafficking would occur in the adjacent location.

4

Contrary to appellant's contention, *People v. Bower* (1979) 24 Cal.3d 638 does not preclude consideration of the high crime nature of the location. This case stands for the proposition that a detention is not warranted just because "otherwise innocent-appearing circumstances" take place in a high-crime location. (*Id.* at p. 645.) But the circumstances here were far from "innocent-appearing," — Macias witnessed an individual he knew previously engaged in illegal drug activity exchange cash for something, and both Aiello and appellant began to flee at the sight of Macias. That this suspicious activity took place in an area known for illegal drug sales is a relevant factor in determining whether the detention was reasonable. (*Wardlow*, *supra*, 528 U.S. at pp. 124-125; *Souza*, *supra*, 9 Cal.4th at p. 240.)

*People v. Jones* (1991) 228 Cal.App.3d 519, relied upon by appellant, is also distinguishable. In *Jones*, the Court of Appeal found a detention unreasonable where an officer witnessed the defendant give another person money on a street corner in an area known for illegal drug activity. (*Id.* at p. 524.) But here, the money was exchanged for something, one of the individuals involved in the exchange was known to have bought illegal drugs at that location, and both members to the transaction began to flee at the sight of a police officer.

Finally, appellant argues the fact he and Aiello fled at the sight of Macias should not be considered consciousness of guilt. Specifically, appellant contends, when Macias turned on his patrol car's spotlight, he had not verbally identified himself as a police officer and appellant and Aiello may have simply wanted to leave the "annoyance" of the spotlight. The trial court's implied finding that appellant and Aiello knew Macias was a law enforcement officer when they began to flee is a finding of fact to which we defer if supported by substantial evidence. Macias testified he was in uniform and a marked police car. He was thus plainly identifiable as a police officer. There was no evidence that an obstruction blocked either appellant's or Aiello's view of Macias's uniform or patrol car, or that the spotlight was so blinding they could see nothing else. Substantial evidence supports the trial court's finding. Moreover, despite appellant's attempt to undermine this factor, it is well settled that flight from a police officer is relevant to the

5

reasonableness of a detention.  (*Wardlow*, *supra*, 528 U.S. at p. 124; *Souza*, *supra*, 9 Cal.4th at p. 241.)

    2.  Vehicle Search

"If there is probable cause to believe a vehicle contains evidence of criminal activity," a warrantless search is permissible "of any area of the vehicle in which the evidence might be found."  (*Arizona v. Gant* (2009) 556 U.S. 332, 347.)  Probable cause exists if, given all the circumstances known at the time, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  (*Illinois v. Gates* (1983) 462 U.S. 213, 238.)

In addition to the circumstances supporting the detention discussed above, Macias found other indications of criminal activity before he searched appellant's car.  First, he found drug paraphernalia on Aiello, indicating that Aiello was still actively using illegal drugs and rendering it more likely that Aiello had just been involved in a drug transaction.[1]  Second, Macias saw drug paraphernalia, a large quantity of cash, and a portable safe in plain view in appellant's car.[2]  The totality of the circumstances gave rise to a fair probability appellant was selling illegal drugs out of his car, and evidence of such activity would be found in the car.  The vehicle search was supported by probable cause.

II.  *Case No. SCR-614245*

    A.  *The Suppression Hearing*

    1.  The People's Witnesses

Deputies Sedgwick and Petersen of the Sonoma County Sheriff's Office testified for the People at the suppression hearing as follows.  Around 8:00 p.m. on February 11, 2012, Sedgwick saw lit fireworks in the parking lot of a Santa Rosa motel, in front of room 2B.  Setting off fireworks is prohibited in Santa Rosa, and Sedgwick and Petersen

---

[1]  To the extent appellant challenges Aiello's patdown search as not reasonable, he lacks standing to do so.  (See *Rawlings v. Kentucky* (1980) 448 U.S. 98, 104-105.)

[2]  Although Macias could have chosen at this point to search for the item that Aiello had tossed away, he was not, as appellant suggests, required to do so.

approached the motel room to investigate. As they were approaching, a woman subsequently identified as Angela Neiman exited room 2B and lit a cigarette. She did not directly respond when Sedgwick asked her whether she set off the firework.

Appellant then emerged from the motel room and admitted lighting the firework. Sedgwick and appellant engaged in conversation approximately 10 to 20 feet away from the motel room. Petersen and Neiman conversed as Neiman stood in the doorway of the room. The door was partially open and Petersen could see two young children playing inside. He also saw a double or queen bed, toys, personal effects, and food. Neiman was supervising the children as she talked to Petersen, glancing back at them and giving them instructions.

At some point during their conversation, Neiman told Petersen that she needed to help her son use the bathroom. Petersen, concerned there might be weapons inside the room, asked if he could follow her. Neiman responded "yes" or "yeah." Petersen stepped inside the room and observed in plain view what he suspected to be illegal drugs and paraphernalia. Appellant did not object when Petersen entered the motel room, although he appeared agitated when Petersen exited.

Petersen told Sedgwick what he had seen and stated they should arrest appellant. After arresting appellant, Sedgwick asked Neiman what she was doing at the motel room that evening. She first responded that she had brought her son to play with appellant's son, but then admitted she was there to purchase illegal drugs.

2. Appellant's Witness

Neiman, the sole witness for appellant at the suppression hearing, testified as follows. On the evening in question, she was visiting appellant, an acquaintance of hers, at a motel room he had rented. About five minutes after she arrived, she stepped out of the room to smoke a cigarette and saw Sedgwick and Petersen approach. Shortly after they began talking to her, appellant came out of the room. Neiman stood in the doorway while appellant talked to Sedgwick and Petersen approximately three feet away. The door was halfway open and Neiman was watching her son and appellant's son as they played inside.

7

When her son told her he needed to use the bathroom, Neiman relayed this to Petersen, who was standing closer to her than Sedgwick. Neiman walked with her son to the bathroom door and then stood in the middle of the motel room, between the bathroom and the outside door. She was watching her son in the bathroom when she heard appellant say, "Hey, what are you doing." Neiman turned around and saw that Petersen had entered the room. Petersen said, "She gave me permission," and Neiman responded that she had not.

Neiman admitted that, when later asked by Sedgwick why she was at the motel room, she initially told him it was a play date for her son. She further admitted that this answer was not the truth, and that she subsequently told Sedgwick the real reason, which was to buy heroin. Neiman suffers from hearing loss and, because she had used heroin earlier on the day in question, was less perceptive that evening than she otherwise would have been.

3. Trial Court's Ruling

The trial court denied appellant's motion to suppress. The trial court credited the deputies' testimony, and found Neiman not credible. Accordingly, the trial court found that Neiman consented to Petersen's entry into the motel room. The trial court further found that Neiman had apparent authority to consent to the entry, upon which Petersen reasonably relied.

B. *Analysis*

Appellant argues (1) Petersen's entry was not justified under the apparent authority doctrine, (2) the deputies improperly removed appellant from the motel room doorway to avoid his objection to the entry, and (3) the trial court improperly credited the deputies' testimony over Neiman's. We conclude Petersen's entry was reasonable and appellant's motion to suppress was properly denied.

1. Apparent Authority

"[A] warrantless search of property . . . is reasonable under the Fourth Amendment where proper consent is given. [Citation.] Where the subject property is a premises occupied by more than one person, a search will be reasonable if consent is

8

given by one of the joint occupants 'who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.' [Citations.] This is so, even where the defendant has not consented to the search. [Citation.] Further, even if the consenting cotenant, in fact, lacks authority, officers may rely on his or her apparent authority. [Citations.]" (*People v. Oldham* (2000) 81 Cal.App.4th 1, 9-10 (*Oldham*).) This apparent authority doctrine "does not suggest that law enforcement officers may always accept a person's invitation to enter premises. . . . As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief" ' that the consenting party had authority over the premises? [Citation.]" (*Illinois v. Rodriguez* (1990) 497 U.S. 177, 188.)

Appellant first contends it was not objectively reasonable for Petersen to conclude that Neiman had authority to consent to the entry, and therefore Petersen had the duty to inquire further into her authority before relying on her consent. We disagree. Neiman emerged from the motel room alone and stood outside smoking a cigarette as the deputies approached. She subsequently stood in the doorway and supervised two young children who were playing inside the room. This conduct made it appear she had control over the premises and the ability to come and go as she pleased. Moreover, the portion of the room visible to Petersen provided no indication only one person was staying there. Under these circumstances, it was reasonable to conclude Neiman was staying in the motel room with appellant and therefore had the authority to consent to Petersen's entry.

The cases cited by appellant requiring further inquiry before a law enforcement officer could rely on apparent authority all involve circumstances in which the officer had reason to suspect the individual in fact lacked apparent authority. (*U.S. v. Reid* (9th Cir. 2000) 226 F.3d 1020, 1025-1026 [male individual's response to officer's knock on apartment door did not constitute apparent authority where officer knew this individual was not on the lease for the apartment, knew a woman owned a car frequently parked in the apartment's designated parking space, and had not seen this individual on any of the

9

officer's many previous visits to the apartment complex]; *State v. Kieffer* (1998) 217 Wis.2d 531, 549-550 [homeowner's statement that the defendant slept in a loft above the garage and did not pay rent did not constitute apparent authority where loft door had a lock to which homeowner lacked key and homeowner stated that he always knocked before entering loft door even if unlocked]; *People v. James* (1994) 163 Ill.2d 302, 318 [the driver's consent to search of vehicle did not constitute apparent authority to search the passenger's purse left on a passenger seat: "The purse was found on a passenger seat in the car, not on the driver's seat, thereby tending to the conclusion that the purse belonged to the passenger, not the driver. It would have been unreasonable for the officer to believe that [the driver] shared some common use in the purse with one of the passengers in the vehicle, since a purse is generally not an object for which two or more persons share common use and authority."]; *State v. Suazo* (1993) 133 N.J. 315, 322 [the driver's consent to search of vehicle did not constitute apparent authority to search bag the defendant identified as his prior to the search].) These cases are therefore distinguishable, because the record reveals no circumstances casting doubt on Neiman's apparent authority prior to Petersen's entry.

Appellant next argues Petersen did not actually believe that Neiman had authority to consent to the entry. Appellant points to the deputies' testimony that after discovering illegal drugs in the motel room they arrested appellant but not Neiman, and instead asked Neiman what she had been doing in the motel room that night. Appellant argues such conduct is not consistent with a subjective belief Neiman shared control of the room.

Petersen's subjective belief is a question of fact. (*Woods*, *supra*, 21 Cal.4th at p. 674 [officer's subjective reason for conducting search is question of fact].) Therefore, we must defer to the trial court's finding that Petersen subjectively believed Neiman had apparent authority to consent if the finding is supported by substantial evidence.[3]

---

[3]   The trial court found, "Neiman appeared to have the apparent authority to consent, upon which . . . Petersen reasonably relied." The trial court's finding that Petersen "relied" on this apparent authority appears to constitute a finding that he subjectively

Petersen testified he suspected Neiman and appellant were "staying together" in the motel room. He further testified that, in his conversation with Neiman prior to the entry, they did not discuss who had rented the room or her relationship with appellant, and that he had no independent knowledge of these matters. Although the decision to arrest only appellant for the illegal drugs found in the motel room suggests Petersen did not attribute them to Neiman, this does not contradict Petersen's testimony about his earlier belief in her authority to consent to the entry to that room; he may have obtained relevant information on this issue after the entry. Substantial evidence supports the trial court's finding that Petersen subjectively believed Neiman had authority to consent to the entry.

2. Removal to Avoid Objection

As noted above, where a property is occupied by more than one person, the consent of one is generally sufficient to render a search reasonable. (*Oldham*, *supra*, 81 Cal.App.4th at pp. 9-10.) However, "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search." (*Georgia v. Randolph* (2006) 547 U.S. 103, 121.) This exception only applies if the defendant is present prior to the search and objects: "So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection[,]" "the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." (*Ibid.*)

Appellant does not claim he objected to the entry prior to its occurrence. Instead, he argues the deputies improperly removed him from the motel room doorway to preclude him from objecting. But the record is silent as to whether it was appellant or Sedgwick who initiated the movement away from the doorway. In any event, even assuming Sedgwick moved appellant, appellant has pointed to no evidence in the record (and we have found none) that any such movement was made to prevent him from objecting to an entry. Absent such evidence, the fact that appellant was "nearby but not invited to take part in the threshold colloquy" does not render the entry violative of his

believed Neiman had such authority; to the extent such finding is not express, it is implied. (See *Woods*, *supra*, 21 Cal.4th at p. 673.)

11

Fourth Amendment rights. (*Georgia v. Randolph*, *supra*, 547 U.S. at p. 121.) *State v. Jackson* (Del.Super.Ct. 2007) 931 A.2d 452, cited by appellant, is not to the contrary, as in that case the defendant in fact objected to the search prior to its occurrence. (*Id*. at p. 454.)

### 3. Credibility Findings

The trial court credited the testimony of Sedgwick and Petersen and found Neiman not credible. Appellant challenges several of the factors relied upon by the trial court in its adverse credibility finding. But we must defer to the credibility determinations of the trial court, as "[t]he trial court is the exclusive judge of the credibility of the witnesses." (*People v. Duncan* (2008) 160 Cal.App.4th 1014, 1018 (*Duncan*).) In any event, there is support in the record for the trial court's adverse credibility finding: among other things, Neiman admitted initially lying to Sedgwick (which appellant concedes "can lessen her credibility") and admitted that she was not as perceptive on the night in question as she would have been had she not used heroin that morning.

Appellant urges us to reject the testimony of the deputies. "To reject the statements given by a witness whom the trial court has found credible, either they must be physically impossible or their falsity must be apparent without resorting to inferences or deductions. [Citation.]" (*Duncan*, *supra*, 160 Cal.App.4th at p. 1018.) Appellant has identified no such statements by Sedgwick or Petersen.

### DISPOSITION

The judgments are affirmed.

                                    _____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.

13