Filed 4/25/23  P. v. Corona CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID REYES CORONA,<br><br>    Defendant and Appellant. | F084951<br><br>(Stanislaus Super. Ct. No. 1498837)<br><br>**OPINION** |

**THE COURT**\*

APPEAL from an order of the Superior Court of Stanislaus County.  Dawna F. Reeves, Judge.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\* Before Franson, Acting P. J., Meehan, J. and De Santos, J.

## INTRODUCTION

In 2019, appellant and defendant David Reyes Corona pleaded no contest to attempted murder and admitted a firearm enhancement, and was sentenced to 15 years in prison.

In 2022, appellant filed a petition for resentencing pursuant to Penal Code section 1172.6.[1] The trial court held appellant was ineligible for resentencing because he was the actual perpetrator, and his conviction was not based on any theory of imputed malice. After appellant filed an appeal from this ruling, his attorney filed a brief with this court pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), and appellant filed a supplemental brief on his own behalf. After reviewing the record and appellant's contentions, we affirm.

## FACTS

The following factual statement is from the preliminary hearing evidence, which the parties stipulated to as the factual basis for appellant's subsequent plea.[2]

**David Cruz's Testimony**

David Cruz (Cruz), the victim in the attempted murder conviction, testified at the preliminary hearing, that he was shot in the face on January 17, 2016.

Cruz testified that a few weeks before the shooting, he met appellant through mutual friends. After that first meeting, Cruz and appellant communicated through calls and text messages, and they got together once at appellant's home in Modesto. They

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated. Appellant filed his petition under former section 1170.95, which was amended effective January 1, 2022, and then renumbered as section 1172.6 without further substantive change on June 30, 2022. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 714; Stats. 2022, ch. 58 (Assem. Bill. 200), § 10, eff. June 30, 2022.) As such, we refer to the subject statute by its current number throughout this opinion.

[2] The preliminary hearing transcript is admissible to determine if appellant's section 1172.6 petition stated a prima facie case for relief, subject to the hearsay rules in the Evidence Code. (§ 1172.6, subd. (d)(3); *People v. Flores* (2022) 76 Cal.App.5th 974, 988.)

primarily talked about smoking marijuana and appellant asked Cruz if he knew about any marijuana dispensaries.

Around 8:30 p.m. on January 17, 2016, appellant contacted Cruz by text message and asked if he had four ounces of medical marijuana; appellant said he did not know of a good dispensary. Cruz replied by text that he did not have enough money to buy that much, and he just had a small amount of marijuana for personal use. Appellant asked him to call the dispensary. Cruz testified that appellant knew Cruz smoked "good" marijuana. Cruz made the call, but no one answered.

Cruz and appellant agreed to meet in the parking lot of the AutoZone store on Paradise Road in Modesto. Cruz said that he would bring the two or three grams of marijuana he had, and he believed they were going to smoke together. Appellant asked if anyone was coming with him.

Cruz testified that he parked his Acura vehicle in front of AutoZone, which was located next to a grocery store. It was a cold and rainy night. There were other people going in and out of the two stores, the parking lot was well-lighted, and there were security cameras in front of the stores.

Cruz received a text message from appellant, who said he was in a Honda that was parked in another part of the store's parking lot, and asked Cruz to move his car there. Cruz testified that he moved his car to the Honda's location, about 1,000 feet away from the front of the store. The Honda was the only car parked in that area. It was darker and there were not any lights. Cruz parked next to the Honda, but "backwards in reverse" so he could quickly leave if anything happened.

Cruz testified that appellant was in the Honda with two people he did not know: a Hispanic woman sitting in the driver's seat, and a Caucasian male in the backseat. At the preliminary hearing, Cruz identified codefendant Vanessa Alvarez as the person in the Honda's driver's seat. Appellant was in the front passenger seat, and an unknown

3.

Caucasian male was in the rear passenger seat. Cruz was surprised that appellant was there with two other people.

Cruz testified that appellant walked up to his car, opened the front passenger door, and got into his Acura. Appellant was wearing black latex-type gloves, similar to surgical gloves. Appellant grabbed Cruz's marijuana card and his small amount of marijuana that were both in the front seat's cupholder. Appellant smelled the marijuana and said, " 'It's fire.' "

Cruz asked appellant why he was wearing gloves, and appellant said it was cold. Cruz testified that the gloves were not the type to keep hands warm.

Cruz thought appellant was going to smoke his marijuana. Instead, the unidentified male got out of the Honda and tried to open the back door of Cruz's car, but the door was locked. Appellant got out of the front passenger seat of Cruz's car and talked to the male, who then entered Cruz's car and sat in the front passenger seat.

Cruz testified that appellant had a gun and shot him in the side of his face, above his lip and to the right of his nose.

"Q. Did you actually see [appellant] holding the gun before the shot went off?

"A. Yes. I seen just like a bright light like a flash, a big flash, 'pah.' I didn't even know what happened. I was – I was checking myself. Looked in the mirror, all blood, my teeth everywhere."

Cruz testified that appellant and the unknown male went back to the Honda. Cruz testified that he was in shock but tried to use his car to block or crash into the Honda to prevent them from leaving. The Honda backed up and rammed the rear passenger door of Cruz's car. Appellant yelled at the Honda's female driver to go, and the vehicle left the parking lot.

Cruz testified that appellant took his marijuana, and believed appellant took his driver's license and ATM card that were also in the cupholder.

4.

Cruz believed he was in shock, drove away from the store, and headed for a hospital. He was bleeding from the mouth and had lost teeth. He saw a law enforcement officer driving by and flagged him down for help. He tried to talk to the officer but there was a hole in his jaw. The officer called an ambulance.

Cruz was in the hospital for a couple of weeks. Cruz lost seven teeth, the tip of his tongue was ripped off, most of his jaw was fractured, and he needed bone and dental implants. Cruz received stitches on his mouth and tongue, his mouth was wired shut for four months, he could not talk and had to write notes to communicate, and he was fed through a stomach tube. At the time of the preliminary hearing in December 2017, Cruz already had six surgeries and still needed three more operations; the additional surgeries were delayed while he was waiting for his insurance "to technically kick in." He had nerve damage and lost feeling on the side of his face, and he had trouble speaking.

### *Cross-examination*

On cross-examination, Cruz acknowledged he had a prior conviction for domestic violence in 2011.

Cruz denied he was selling marijuana. There were text messages on his cell phone about marijuana, but it was later determined these were messages between Cruz and appellant and exchanged before their meeting that night.

Cruz later spoke to friends and looked at Facebook pages, and believed he recognized a man as the third suspect.

Cruz testified that he lost track of his cell phone after the shooting and reported to the police that appellant took it. Cruz also believed appellant used his ATM card after the shooting based on transactions on his account statement. Cruz acknowledged he was later advised by the police that his cell phone was found on the floorboard of his car. Cruz also determined that he made the ATM withdrawals before the shooting, and the transactions were posted after the incident.

5.

**Detective Pouv**

The only other witness at the preliminary hearing was Detective Ra Pouv, who testified about the investigation, interviews with Cruz and other witnesses, and the arrest of appellant and codefendant Alvarez.

Detective Pouv initially interviewed Cruz at the hospital, and he could not speak because his jaw was wired shut. Cruz communicated through gestures and notes. Cruz initially reported that appellant got into his car and saw the marijuana, and said he wanted the other man to look at the drugs. Appellant and the other man switched positions, and the other man smelled the marijuana and said it was " 'fire.' "

Detective Pouv investigated the man who Cruz identified on Facebook as the third suspect but determined that man was not involved in the shooting. Pouv testified that the text messages on Cruz's cell phone about marijuana were between Cruz and appellant when they were setting up their meeting that night and did not show that Cruz was selling drugs.

Detective Pouv recovered a video from a security camera at an adjacent store, and it showed activities that were consistent with Cruz's account: Cruz's car backed into a parking space next to appellant's parked car; a subject walked out of the passenger door of appellant's car, went toward Cruz's car, and the passenger door opened on Cruz's car; a second subject walked to the driver's side of Cruz's car and tried to get in; the second subject moved to the passenger side of Cruz's car; Cruz's car appeared to pull behind appellant's car; appellant's car hit Cruz's car and left the area; and Cruz's car swerved through the parking lot.

## PROCEDURAL BACKGROUND

On February 26, 2016, a first amended complaint was filed in the Superior Court of Stanislaus County that charged appellant with count 1, premeditated attempted murder; and count 2, robbery, with firearm enhancements. It was further alleged in count 3 that codefendant Vanessa Alvarez was an accessory.

6.

On December 5, 2017, a joint preliminary hearing was held, as set forth above, and appellant and codefendant Alvarez were held to answer.[3]

## The Information

On December 19, 2017, an information was filed that alleged appellant and codefendant Alvarez committed the following offenses: in count 1, appellant was charged with the attempted murder of Cruz, with the enhancement that the murder was willful, deliberate, and premeditated (§§ 664, 187, subd. (a)); in count 2, appellant and codefendant Alvarez were charged with robbery of Cruz (§ 211); and in count 3, codefendant Alvarez was charged with being an accessory (§ 32).

As to counts 1 and 2, it was alleged that in the commission of the offenses, appellant intentionally discharged a firearm resulting in great bodily injury or death (§ 12022.53, subd. (d)).

## The Plea Hearing

On January 29, 2018, the court convened a hearing in appellant's case, and defense counsel stated that the parties had agreed appellant would plead to count 1, attempted murder, for the lower term of five years; he would not admit the premeditation

---

[3] At the conclusion of the testimony, defense counsel argued Cruz's testimony was suspicious and not credible, his testimony was inconsistent with his prior statements to Detective Pouv, Pouv determined Cruz's claimed identification of the third suspect was erroneous, Cruz falsely reported appellant took his cell phone and illegally used his ATM card, and there was no credible evidence that appellant took anything from Cruz's car. Counsel asserted Cruz "clearly lied on the stand," he was likely selling marijuana, and that was his motive to lie. Counsel further argued appellant should only be held to answer for felony assault.

The prosecutor replied that Cruz was confused about what happened to his cell phone after he was shot, and he mistakenly believed someone else made ATM withdrawals that were posted after the shooting. The prosecutor further argued the circumstances supported attempted murder and robbery because appellant directed Cruz to move his car to an isolated area of the parking lot, he carried out the crime without provocation, and shooting someone in the face at close range showed an intent to kill.

The court rejected defense counsel's arguments and held appellant to answer for attempted murder and robbery.

allegation; and he would admit a lesser firearm enhancement pursuant to section 12022.53, subdivision (b) for an aggregate indicated term of 15 years. The prosecutor agreed with defense counsel's statement.

Appellant was advised of, and waived, his constitutional rights, and stated that he understood the consequences of his plea and admission and had enough time to discuss the plea with his attorney. The prosecutor and defense counsel stipulated that the court could consider the preliminary hearing transcript for the factual basis for appellant's plea and admission.

Thereafter, appellant pleaded no contest to count 1, attempted murder, and admitted he personally used a firearm in the commission of the offense (§ 12022.53, subd. (b)). The court granted the prosecution's motion to dismiss the remaining charges and enhancements.

## Sentence

On March 1, 2018, the court sentenced appellant to the aggregate term of 15 years based on the lower term of five years for count 1, plus a consecutive term of 10 years for the firearm enhancement, consistent with the plea agreement.

Appellant did not file an appeal of his conviction and sentence.

## APPELLANT'S PETITION

On or about April 1, 2022, appellant filed a petition for resentencing of his attempted murder conviction pursuant to section 1172.6 and requested appointment of counsel.

Appellant filed a supporting declaration that consisted of a preprinted form where he checked boxes that (1) he was eligible for resentencing because a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable

8.

consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or manslaughter; and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

On April 8, 2022, the superior court appointed counsel to represent appellant and requested further briefing from the parties.

**The Prosecution's Opposition**

On May 9, 2022, the prosecution filed opposition and argued appellant was ineligible for resentencing because he was convicted of attempted murder based on his own conduct and acted with malice aforethought. In support of this argument, the prosecution filed the transcripts from the preliminary and plea hearings and asserted the court could rely on the preliminary hearing evidence to find appellant was ineligible because appellant stipulated to that evidence as the factual basis for his plea, and Cruz testified about what happened.

**Appellant's Reply**

On May 16, 2022, appellant's counsel filed a reply to the opposition, requested the court independently review the record to determine if the petition stated a prima facie case, and argued the court should issue an order to show cause and conduct an evidentiary hearing.

**The Court's Hearing**

On July 28, 2022, the court held a hearing on appellant's petition. Appellant appeared via teleconference with his attorney.

The court asked the parties if it could review the preliminary hearing transcript to determine the merits of appellant's petition. Both parties agreed that it could. Appellant addressed the court and claimed he was never identified as the actual shooter, and the victim made multiple false statements. The court directed appellant to speak with his

9.

attorney about these claims, and that it was only addressing the validity of his section 1172.6 petition.  The parties submitted the matter.

**The Court's Denial of the Petition**

On July 29, 2022, the court issued a written ruling stating that it had reviewed the pleadings, the preliminary hearing transcript, and the plea hearing.  The court denied appellant's petition and found he was ineligible for relief as a matter of law.

> "Review of the record of conviction reflects that [appellant] was prosecuted as a direct perpetrator and not on a theory of imputed malice or a theory of natural and probable consequences.
>
> "In the evening hours of January 17, 2016, [appellant] shot David Cruz in the face, took his property, and fled…. [Appellant] entered a no contest plea to attempted murder and admitted that during the offense he personally used a firearm in violation of … section 12022.53(b). Accordingly, the record of conviction demonstrates that [appellant] was not charged with or convicted of attempted murder under a theory of imputed malice based on a felony murder theory, the natural and probable consequences doctrine, or any other theory where malice is imputed based only on participation in an underlying crime.  [Appellant] was prosecuted and convicted as a direct perpetrator based on his own actions and malice which is a theory of culpability that was not altered in revised … Sections 188 and 189."

**Appellate Briefing**

On September 12, 2022, appellant filed a notice of appeal.

On January 27, 2023, appellant's counsel filed a brief with this court pursuant to *Wende* and *Delgadillo* and requested an independent review of the record; it included counsel's declaration that his client was advised he could file his own brief with this court.

On the same day, this court sent an order to appellant that advised him about the holding in *Delgadillo*, that independent *Wende* review is not required for appeals from the denial of section 1172.6 petitions, and further stated:  "This order serves as a notice that you have 30 days from the date of this order to file a supplemental letter or brief on

10.

your own behalf raising any arguable issues. If this court does not receive a supplemental letter or brief from you within the time specified in this order, the appeal may be dismissed as abandoned."

On February 23, 2023, appellant filed a supplemental letter brief with this court.[4]

## DISCUSSION

**I.    Section 1172.6**

We begin with Senate Bill No. 1437's (2017–2018 Reg. Sess.) (Senate Bill 1437) amendments of sections 188 and 189, the enactment of section 1172.6, and subsequent statutory amendments.

"Effective January 1, 2019, Senate Bill ... 1437 ... amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v Harden* (2022) 81 Cal.App.5th 45, 50–51; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," codified in section 1172.6. (*Strong, supra*, 13 Cal.5th at p. 708, fn. omitted.) The original version of the statute permitted "a person with an existing conviction for felony murder or murder

---

    **4** "If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues." (*Delgadillo, supra*, 14 Cal.5th at p. 232.)

under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill … 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill 775) amended former section 1170.95 and " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.) Former section 1170.95 was renumbered as section 1172.6 without substantive change on June 30, 2022. (*People v. Saibu*, *supra*, 81 Cal.App.5th at p. 714; Stats. 2022, ch. 58 (Assem. Bill. 200), § 10, eff. June 30, 2022.)

Section 1172.6, subdivision (a) thus states:

> "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at

12.

which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."[5]  (§ 1172.6, subd. (a), italics added.)

The court shall appoint counsel if requested by petitioner.  (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response.  The petitioner may file and serve a reply after the response is served.  (*Id.*, subd. (c).)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."  (§ 1172.6, subd. (c).)

The prima facie determination is a question of law, and the trial court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law. (*People v. Lewis* (2021) 11 Cal.5th 952, 966 (*Lewis*).)

*Lewis* announced a prejudicial error standard under *People v. Watson* (1956) 46 Cal.2d 818, that if the court failed to appoint counsel or violated the petitioner's statutory rights under former section 1170.95, the petitioner must "therefore 'demonstrate there is a reasonable probability that in the absence of the error he [or she] … would have obtained a more favorable result.' " (*Lewis, supra*, 11 Cal.5th at p. 974.)  To demonstrate prejudice from the denial of a former section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Id.* at p. 974; see *People v. Watson, supra*, 46 Cal.2d at p. 836.)

---

[5] While not applicable herein, section 189 was amended to allow for felony-murder liability where the victim is a peace officer.  (§ 189, subd. (f).)

If an order to show cause is issued, "the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence…." (§ 1172.6, subd. (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens…."[6] (§ 1172.6, subd. (d)(3).)

## II. Appellant Was Ineligible for Relief as a Matter of Law

The court complied with section 1172.6 by appointing counsel, requesting further briefing, conducting a hearing, and filing an order that explained why it was not going to issue an order to show cause. We thus turn to the court's order that found he was ineligible for relief as a matter of law.

---

[6] "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing" in determining whether he made a prima facie case for relief. (*People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. omitted.)

In determining whether a petitioner made a prima facie case for relief, the court may review the record of conviction. (*Lewis, supra,* 11 Cal.5th at pp. 971–972 & fn. 6.) The record of conviction allows the court "to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that … culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Id.* at p. 971.) The preliminary hearing transcript is part of the record of conviction, with the exception that "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).)

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Booker* (2011) 51 Cal.4th 141, 177–178; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1123.) "Intent to unlawfully kill and express malice are, in essence, 'one and the same.' " (*People v. Smith* (2005) 37 Cal.4th 733, 739.) "[T]he act of purposefully firing a lethal weapon at another human being at close range, without legal excuse, generally gives rise to an inference that the shooter acted with express malice." (*Id.* at p. 742.)

In this case, the parties stipulated at appellant's plea hearing that the preliminary hearing transcript constituted the factual basis for appellant's no contest plea to attempted murder and admission of the firearm enhancement. Cruz was the victim of the attempted murder, and testified at the preliminary hearing that appellant raised a gun, fired it at his face, and he suffered serious wounds. The trial court properly relied on Cruz's direct testimony, and not on any hearsay evidence, to find appellant was the actual perpetrator who shot him.

Appellant was convicted of attempted murder based on malice aforethought and the intent to kill, he was not convicted based on any theory of imputed malice, and he was ineligible for resentencing as a matter of law.

## III.  Appellant's Contentions

Appellant filed his own supplemental letter brief with this court and raised several issues.

### A.  *The Victim's Testimony*

First, appellant asserts that Cruz's testimony at the preliminary hearing should have been stricken because he allegedly lied under oath.  Section 1172.6 does not permit a petitioner to establish eligibility for resentencing based on alleged errors leading to his conviction.  (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)  " 'The purpose of [section 1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' "  (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.)

Appellant did not file a direct appeal challenging any aspect of his plea, conviction, and sentence.  Even if appellant's contentions were cognizable in this appeal, Cruz's testimony, as set forth above, was not inherently unbelievable or implausible.  (See, e.g., *People v. Dalton* (2019) 7 Cal.5th 166, 209; *People v. Duncan* (2008) 160 Cal.App.4th 1014, 1018 [" 'The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable.'  [Citation.]  To reject the statements given by a witness whom the trial court has found credible, either they must be physically impossible or their falsity must be apparent without resorting to inferences or deductions"].)

### B.  *Senate Bill No. 620*

Next, appellant argues that at the hearing on his section 1172.6 petition, the court should have considered whether to dismiss the 10-year term imposed for his admission to

the section 12022.53, subdivision (b) firearm enhancement, that was part of his plea and indicated sentence in 2015.

Appellant's argument is based on amendments enacted by Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620). The imposition of a firearm enhancement under section 12022.53 was previously mandatory and could not be stricken in the interests of justice pursuant to section 1385 or any other provision of law. Effective January 1, 2018, section 12022.53 was amended by Senate Bill 620 to give discretion to the trial court to strike firearm enhancements. (*People v. Baltazar* (2020) 57 Cal.App.5th 334, 337.) Section 12022.53, subdivision (h) now states: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law." This amendment applies retroactively "only to nonfinal judgments or to final judgments where the defendant is being resentenced under some other law." (*People v. Baltazar,* at pp. 340–341.)

Appellant's case has been final since 2015, his sentence was not vacated or recalled for any reason, and the court was not required to address any other aspect of his sentence when it denied his section 1172.6 petition.

C.    *Senate Bill No. 81*

Appellant separately argues that at the hearing on his section 1172.6 petition, the court should have modified his sentence pursuant to Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81).

Effective January 1, 2022, Senate Bill 81 (2021–2022 Reg. Sess.) amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements in the interest of justice. (*People v. Flowers* (2022) 81 Cal.App.5th 680, 686.) The amendments are not retroactive because the amended statute specifically states they " 'shall apply to sentencings occurring *after the effective*

*date of the act* that added this subdivision.' (§ 1385, subd. (c)(7), italics added.)" (*People v. Flowers,* at p. 686, italics added in original.)

Appellant's sentence was imposed prior to the effective date of Senate Bill 81, his judgment became final in 2015, and these statutory amendments were not applicable to his case.

### D.     *Youthful Offender Hearing*

Appellant argues he should have received a "*Franklin*" hearing, presumably referring to a hearing to make a record of youth-related factors relevant to his parole suitability pursuant to section 3051 et seq., section 4801, subdivision (c), and *People v. Franklin* (2016) 63 Cal.4th 261, 283–284.

There is nothing in the record to show appellant filed a petition for a *Franklin* hearing, and such issues are not independently cognizable in a section 1172.6 petition.[7]

### E.     *Padilla*

We note that in *People v. Padilla* (2022) 13 Cal.5th 152, the California Supreme Court held that even though the judgment in that case had become final, Proposition 57, that amended the law governing the punishment of juvenile offenses in adult criminal court, applied retroactively at a resentencing hearing because defendant's sentence had been vacated in a writ proceeding. (*Id.* at pp. 158, 163.) "When [appellant's] sentence was vacated, the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him, and [appellant] regained the right to appeal whatever new sentence was imposed." (*Id.* at pp. 161–162.) The judgment "thus became nonfinal," and there was "no 'constitutional obstacle' to applying the *Estrada*[8] presumption to his case." (*Id.* at p. 162.) "Once a court has determined that a defendant

---

[7] According to the abstract of judgment, appellant was 17 years old when he committed the attempted murder.

[8] *In re Estrada* (1965) 63 Cal.2d 740.

is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose any appropriate sentence." (*Id.* at p. 163.)

The instant matter was limited to appellant's petition for resentencing that was filed pursuant to section 1172.6, alleging that he was convicted of attempted murder based on a theory of imputed malice. As explained in part II., *ante*, appellant was ineligible for resentencing as a matter of law because he was the actual perpetrator of the attempted murder and acted with express malice and intent to kill. Thus, the matter is not being remanded for resentencing, appellant's sentence has not been vacated, the judgment from his 2015 conviction remains final, and the statutory amendments discussed in his supplemental briefing are not applicable to his case.

## DISPOSITION

The court order of July 29, 2022, denying appellant's section 1172.6 petition for resentencing, is affirmed.